UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Doug Murphy, | Civ. No. 07-5080 |
| Plaintiff, | |
| vs. | **DEFENDANT S'MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |
| Kmart Corporation, | |
| Defendant. | |

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Rule 37.1 of the Local Rules of this Court, Defendant Kmart Corporation ( Kmart )'moves this Court for a protective order to prevent Defendant Kmart from having to respond to an unfocused and overly broad Rule 30(b)(6) deposition notice.

I.      INTRODUCTION

On October 15, 2008, Plaintiff served Kmart with an Amended Notice of Rule 30(b)(6) Deposition ( Plaintiff s 'Amended Notice  or  Notice )'that failed to designate areas of inquiry with the reasonable particularity required by Rule 30 of the Federal Rules of Civil Procedure.  In addition to its lack of specificity, the categories of information set forth in Plaintiff s 'Amended Notice are both temporally and geographically overbroad  —particularly in light of the claims asserted in this single-plaintiff case.  Plaintiff s 'Amended Notice is improper for the additional reason that it is replete with vaguely-worded areas of inquiry that are virtually incomprehensible in the context of the Notice and this lawsuit.  Plaintiff s 'Notice purports to obligate Kmart to designate and prepare witnesses to testify on topics that lack any reasonable degree of specificity, and have no relevance to the claims asserted in this matter.  Moreover, many of Plaintiff s 'areas of inquiry are unnecessarily cumulative and duplicative of written discovery

Plaintiff has already propounded in this case, and seek information that has already been provided to Plaintiff or can be obtained by means more efficient and less burdensome than deposition of a corporate designee.  Despite Kmart's diligent efforts to work with Plaintiff to resolve its concerns regarding the Notice without court intervention, Plaintiff has refused to refine the Notice in accordance with applicable procedural rules and controlling case law. Therefore, Kmart seeks a protective order prohibiting Plaintiff from deposing Kmart's corporate representative(s) pursuant to Plaintiff's currently filed Amended Rule 30(b)(6) Deposition Notice.

## II.   FACTUAL BACKGROUND

### A.   Relevant Background Facts Pertaining to Plaintiff's Age Discrimination Claim.

Plaintiff Doug Murphy began his career with Kmart in 1975, and spent the last ten years of his employment as a Store Manager in a single store located in Rapid City, South Dakota. (Deposition of Doug Murphy [Murphy Dep.], pp. 42-3, 207.)[1]  He resigned in November 2005. As is stated both in Plaintiff's Complaint and in his memorandum supporting the motion to compel he recently filed in this matter (Doc. No. 58), Plaintiff's complaints of age discrimination center around his last supervisor, Jerry Rudrude.  (*See generally* Complaint and Plaintiff's Memorandum in Support of Motion to Compel (Docket No. 59), p. 2.)  In June 2004, Rudrude became the District Manager for Kmart's District 914, the District which includes the Rapid City store where Plaintiff worked.  (Deposition of Jerry Rudrude [Rudrude Dep.], pp. 111, 113, 155-56.)  District 914 includes approximately ten (10) Kmart stores.[2]  (*Id*. at p. 37.)  Rudrude was responsible to supervise all of the Store Managers in District 914; he had no supervisory

---

[1] The deposition testimony cited in this Memorandum is attached as Exhibits 6 & 7 to the Affidavit of Susan K. Fitzke.

[2] From time to time, Kmart has realigned District 914 to include different or additional stores. The district as it is currently aligned, however, contains ten (10) stores.

responsibility over anyone outside of this District.

Upon assuming responsibility for the Rapid City store where Plaintiff worked, Rudrude observed numerous issues reflecting Plaintiff's poor management of the store, including issues with store operations, appearance and customer service.  (Rudrude Dep. pp. 170-73.)  When coaching did not resolve Plaintiff's subpar performance, Rudrude placed Plaintiff on a developmental action plan in hopes of correcting these issues.  (*Id*.)

Shortly thereafter, and unrelated to the developmental action plan, the Rapid City store was subjected to a routine audit.  The audit uncovered irregularities at the store, including approximately $300 in unauthorized cash paid to Plaintiff, and over $3,000 in merchandise improperly included in store inventory.  Rudrude, therefore, sent Plaintiff a list of questions regarding the irregularities noted in the audit.  Plaintiff refused to answer the questions and attempted to "plead the Fifth."  (Murphy Dep. pp. 260-63; Fitzke Aff., Ex. 4.)  Rudrude explained to Plaintiff that he was required to cooperate with the investigation and that he could not "plead the Fifth."  Following this interaction, Plaintiff submitted his resignation by e-mail, stating he was going to pursue other opportunities.  (Murphy Dep. p. 263; Fitzke Aff., Ex. 5.)  Plaintiff was replaced by Charles Schwab, who is older than Plaintiff, earned a higher salary than Plaintiff, and who was a longer service employee than Plaintiff.

Plaintiff's recent deposition testimony confirms that his allegations of age discrimination focus almost exclusively on Rudrude.  Indeed, Plaintiff's primary "evidence" of age discrimination was that he believed that Rudrude's evaluation of his performance was too harsh or unwarranted.  (Murphy Dep. pp. 116-19.)  In other words, he disagreed with his supervisor's assessment of his performance.  The only other incident that Plaintiff claims was "evidence" of discrimination occurred during the Spring of 2003 or 2004 when Plaintiff claims to have

attended a meeting in Casper, Wyoming where Divisional Coach, Rick Carr, allegedly made a comment to the effect that "We need to get more younger people into the Company." (*Id*. at 52-3, 284.) This stray comment is the *only* age-related comment that Plaintiff claims to have heard, and it was made (if at all) one and a half to two and a half years before Plaintiff quit his job. Furthermore, Plaintiff did not report to Carr, and Carr had no involvement in Rudrude's evaluation of Plaintiff's performance. (Rudrude Dep. pp. 24-5.) In fact, Plaintiff has presented no evidence that anyone outside of the district where he worked — District 914 — was involved in any decisions impacting his employment.

**B.      Procedural Background.**

On September 12, 2008, Plaintiff served Kmart with a procedurally deficient notice of Rule 30(b)(6) deposition. (Fitzke Aff.; Ex. 1.) With that notice, Plaintiff attempted to preemptively designate Kmart's Rule 30(b)(6) witness for Kmart. Plaintiff had "selected" Plaintiff's last supervisor, Jerry Rudrude — rather than follow the rule which requires an organization to make the appropriate designation. Immediately thereafter, counsel for Kmart contacted Plaintiff's counsel to confer regarding the deficiencies of the September 12, 2008, notice, and the requirements of Rule 30(b)(6). In addition to the improper designation of its witness, Kmart advised Plaintiff of a number of other objections to the notice as issued, including that a number of his inquiries lacked the specificity necessary for Kmart to designate a witness and prepare the witness to testify. Kmart also advised that many of the inquiries were overly broad and sought information irrelevant to Plaintiff's claims in this matter. (Fitzke Aff. ¶ 3.) Plaintiff agreed to issue an amended 30(b)(6) notice and to consider Kmart's objections to the identified categories of information. (*Id*.)

On September 23, 2008, Plaintiff served Kmart with an amended Notice of Rule 30(b)(6) Deposition. (Doc. No. 47.) Although the notice reflected that Plaintiff was no longer

designating Kmart's corporate representative, it still contained the categories of information that Kmart had previously advised Plaintiff were improper, and included additional areas of inquiry that were similarly vague, duplicative, overbroad and lacking in specificity. (*See id.*) Again, Kmart conferred with Plaintiff regarding the improprieties of the notice. To that end, Kmart prepared a letter to Plaintiff highlighting each of its specific objections to the categories of information included in Plaintiff's Notice. (Fitzke Aff. Ex. 2.) Having received no response to that letter, on October 9, 2008, counsel for Kmart contacted Plaintiff's counsel by telephone to confer regarding Kmart's objections to the notice. (Fitzke Aff. ¶ 6.) Plaintiff's counsel agreed to consider Kmart's objections to the Rule 30(b)(6) Notice. (*Id.*) Again, receiving no further communication on this issue, counsel for Kmart again contacted Plaintiff's counsel to discuss this issue on October 13, 2008. (Fitzke Aff. ¶ 7.) Plaintiff's counsel stated that Plaintiff would amend his Rule 30(b)(6) notice in response to Kmart's objections. (*Id.*)

On October 15, 2008, Plaintiff issued an Amended Notice of Rule 30(b)(6) Deposition ("Plaintiff's Amended Notice" or "Notice"). (Docket No. 66.) Upon receipt of Plaintiff's Amended Notice, Kmart again contacted Plaintiff's counsel to discuss the Notice, specifically that it failed to address or cure Kmart's objections to the categories of vague information sought in Plaintiff's initial Rule 30(b)(6) notice. (Fitzke Aff. ¶ 8.) The parties have been unable to resolve this dispute, and Kmart now requests that the Court issue a Protective Order prohibiting Plaintiff from taking a Rule 30(b)(6) Deposition of Kmart's corporate designee(s) regarding the categories of information contained in Plaintiff's Amended Notice that seek information outside District 914, information prior to January 1, 2003 or information that has already been provided.

## III.   LEGAL ARGUMENT

### A.   The Legal Standard.

While Rule 26 of the Federal Rules of Civil Procedure contemplates broad discovery, the rule also recognizes that discovery must be limited in appropriate circumstances. *See generally* Fed. R. Civ. P. 26. Therefore, upon a showing of "good cause," "federal courts will "issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense. "Fed. R. Civ. P. 26(c)(1). Specifically, this Court is empowered to issue an order "prescribing a discovery method other than the one selected by the party seeking discovery," "or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. "*Id*. at 26(c)(1)(C)-(D). Kmart is entitled to the entry of an Order barring the discovery Plaintiff seeks, because his Notice fails to describe intended areas of inquiry with "reasonable particularity" "as required by Rule 30, and those areas of inquiry identified far exceed the bounds of permissible discovery in this case.

### B.   Kmart's Specific Objections to the Areas of Inquiry Designated in Plaintiff's Notice.

#### 1.   Plaintiff's Amended Notice Seeks Irrelevant Historical and Other Corporate Information and Fails to Set Forth His Areas of Inquiry with Particularity.

Plaintiff's first inquiry seeks "[t]he corporate history of Kmart Corporation, Kmart Holding Corporation, Sears Corporation, and Sears Holdings Corporation for the last ten (10) years, i.e., relationship of Kmart Corporation, Kmart Holding Corporation, Sears Corporation and Sears Holdings Corporation and the bankruptcy in 2001. "(Doc. #66 at #1.) This inquiry exceeds the scope of discovery permitted by Rule 26. *See* Fed. R. Civ. P. 26(b)(1). As Kmart has repeatedly reminded Plaintiff, Kmart Corporation was Plaintiff's former employer and is the only defendant in this matter. Sears Holdings Company ( "Sears" )"was dismissed from this

matter by Order dated January 9, 2008.  (Docket No. 20.)  While Sears Holdings Corporation is a parent company to Kmart, this corporate relationship is completely irrelevant to Plaintiff's' claims.

Even when limited to Kmart, however, this inquiry is improper and should be quashed. First, this inquiry is overbroad and burdensome in that it seeks tremendous amounts of corporate information wholly unrelated to any aspect of Plaintiff's claims in this case, and which is not reasonably contemplated to lead to the discovery of relevant evidence.  As set forth above, this is a single-plaintiff age discrimination case relating to events occurring at a single Kmart store during a limited time period in 2004 and 2005.  Therefore, information relating to corporate entities having no relationship to Plaintiff or his claims, and financial matters almost a decade old, have no relevance to this matter, and such inquiries are not likely to lead to the discovery of admissible information.  *See Callanan v. Runyun*, 75 F.3d 1293, 1298 (8th Cir. 1996) (discovery sought must be calculated to lead to evidence that would "assist in the development of a reasonable inference of discrimination within the context of each case's respective facts.").

Furthermore, Plaintiff fails to describe this inquiry in any reasonably specific manner that would permit Kmart to designate knowledgeable witnesses and adequately prepare them to address the matters set forth in this category.  "To allow [Rule 30(b)(6)] to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute. " Fed. R. Civ. P. 30(b)(6); *Union Pac. R.R. Co. v. Mike's Train House*, 2006 U.S. Dist. LEXIS 56349, *18 (D. Neb.  Aug. 10, 2006) (emphasis added).  A request seeking information about Kmart's "corporate history "and its "relationship "with other corporate entities fails to meet the "particularity "requirement of the Federal Rules.  Kmart cannot designate a witness competent to

testify about all aspects of Kmart's corporate history for the past ten years, or all of the details specific to its various corporate relationships.  If Plaintiff seeks a broad overview of Kmart's corporate history, then there are certainly less burdensome means of obtaining that information other than through the deposition of a corporate designee.  Indeed, like many other corporations in this electronic age, Kmart maintains general corporate information and other Company information on its website.[3]  Additionally, since Kmart is a publicly-traded company, additional information, such as Kmart's Securities and Exchange Commissions filings, is publicly available through other conveniently accessible means, such as www.sec.gov.

Additionally, Plaintiff's request mentions Kmart's 2001 Chapter 11 bankruptcy filing (the filing occurred in 2002).  Other than the fact that the filing occurred, this area of inquiry is not sufficiently defined to properly advise Kmart as to what, if any, additional information this request may be seeking.  Therefore, considering the burdensome nature of Plaintiff's inquiry, as well as its failure to meet appropriate procedural standards, Kmart requests that this Court enter an Order quashing this inquiry.

## 2. Plaintiff is Not Entitled to "Business Plans" Which Relate to Stores Outside the Single Corporate District in Which He Worked.

Plaintiff's second inquiry seeks "[b]usiness plans that Defendant (all corporations listed in 1., above) developed from 2001 to 2006, regarding retention or termination of salaried employees."  (Doc. #66 at #2.)  Like Plaintiff's first inquiry, this inquiry, too, is deficient under Rule 26.  First, as noted above, no entity other than Kmart Corporation, which is the sole defendant in this matter, is properly subject to discovery in this case.  Therefore, Kmart cannot produce a corporate designee to testify regarding business planning conducted by and information pertaining to other corporate entities.

---

[3] http://www.kmartcorp.com/corp/story/general/corporate_history.stm.

Plaintiff's second request is also improper because it is temporally, substantively and geographically overbroad.  First, the time frame requested in the inquiry is unduly burdensome and far too broad in light of Plaintiff's far more limited allegations relating to specific occurrences in 2004 and 2005.  As noted above, Plaintiff's discrimination claims relate with one isolated occurrence to the conduct of his former supervisor, Jerry Rudrude.  Rudrude did not even begin supervising Plaintiff until June 2004.  Given those facts, there is no basis for Plaintiff to seek discovery of any information relating to time periods preceding January 1, 2003.  *See e.g.*, *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005) (affirming district court's decision to limit discovery in Title VII case to one-year period preceding plaintiff's claims).  Therefore, instead of reasonably tailoring his request to reach discoverable information probative of his claims, Plaintiff has propounded an unreasonably broad inquiry that attempts to reach business information that has no relevance to any aspect of his case.

Moreover, for the last 10 years of his employment, Plaintiff held the same position in the same store   that is, Store Manager of the Kmart store in Rapid City, South Dakota.  Therefore, the store manager position is the *only* relevant position at issue in Plaintiff's case.  Plaintiff's request, however, seeks information regarding positions Plaintiff never held, and which have nothing to do with his job.

Further, Plaintiff's request seeks nationwide discovery of planning conducted by Kmart relating to the retention or termination of all salaried employees.  However, in employment discrimination cases, the courts readily limit discovery to information about employees in the same department or office, unless plaintiff makes a showing of a particularized need and the relevance of broader information.  *See e.g.*, *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 729 (8th Cir. 1997) (district court properly limited plaintiff's discovery requests to the division

of the company in which he worked); *Falcon v. Gen. Tel. Co.*, 626 F.2d 369, 376 (5th Cir. 1980), *rev'd on other grounds*, 457 U.S. 147, 102 S. Ct. 2364 (1982) (upholding discovery limit to only division); *Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D. Kan. 1995) (limiting discovery to plaintiff's employing unit); *Nat'l Organization for Women v. Sperry Rand*, 88 F.R.D. 272, 278 n.8 (D. Conn. 1980) (discovery limited to facilities where plaintiff was employed and had requested transfers).

Plaintiff has not alleged any particularized need for broader information.  Rather, he primarily points to Rudrude as the person who discriminated against him.  Since Rudrude only supervised individuals in District 914 where Plaintiff worked, the only individuals at all likely to be similarly situated to Plaintiff are located in District 914, and there is no basis for any discovery beyond that district.  *See e.g.*, *Hinton v. Entex Inc.*, 93 F.R.D. 336 (E.D. Tex. 1981) (discovery limited to one facility when plaintiff made no specific allegations pertaining to any other facility).  Indeed, without some specific allegation regarding employees outside of District 914 who were involved in the circumstances of his departure from Kmart, Plaintiff cannot justify this sort of nationwide fishing expedition.  *See e.g.*, *Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588, 592 (5th Cir. 1987); *Hinton*, 93 F.R.D. at 337 (To burden Entex with having to provide the requested information relating to all its facilities would be to condone the fishing expedition condemned by [the court in *Westinghouse*]).

Here, Plaintiff cannot demonstrate that information from outside of District 914 where he worked is relevant or likely to lead to the discovery of admissible information.  First, persons who reported to Kmart managers outside of District 914 are not similarly situated to Plaintiff and their experiences are irrelevant to Plaintiff's ability to demonstrate that Rudrude's decisions were motivated by unlawful animus.  *See Sgro v. Stek et al.*, 2008 U.S. Dist. LEXIS 27175, *31-34 (D.

N.J. Mar. 31, 2008)[4] (excluding at summary judgment proffered testimony of age discrimination by supervisor who was not involved in employment decision at issue).

Nor can Plaintiff rely on his speculation that Kmart must have had some "intent and plan to eliminate highly compensated older workers" to expand the proper scope of discovery – especially where, as here, Plaintiff quit his job and his replacement was both older and better compensated. Speculation alone cannot support a request for unlimited discovery on a national basis. *See Wagoner v. Pfizer, Inc.*, 2008 U.S. Dist. LEXIS 24262, *15-16 (D. Kan. Mar. 26, 2008)[5] ( "[s]imply alleging that plaintiffs seek evidence of corporate animosity is not sufficient" ).

Plaintiff's inquiry should be quashed for the additional reason that it is unreasonably cumulative. Indeed, Plaintiff propounded a document request seeking the identical information, and Kmart has already produced applicable policies bearing upon Plaintiff's position as Store Manager. (*See* Response to Request No. 3 of Defendant's Response to Plaintiff's Second Requests for Production ( "Response to Second Requests" ), attached as Fitzke Aff., Ex. 3.) Plaintiff is not entitled to any additional information beyond that which Kmart has already provided, and his deposition notice should be quashed.

### 3. Plaintiff's Inquiries Regarding Policies Related to "Retention and Termination" Are Duplicative of His Previous Discovery Requests and Seek Irrelevant Information.

Plaintiff's third and fourth inquiries seek "[c]orporate policies or philosophies regarding retention or termination" of "salaried employees who are 40 years of age or older or had been employed by these entities fifteen (15) or more years" and "salaried employees who were stationed in one position for five (5) years or longer with the Defendant." (Doc. #66 at #3-4.) Like Plaintiff's previous inquiries, these inquiries are deficient and should be quashed. First,

---

[4] A copy of this case has been previously provided to the Court. (Doc. #75, Ex. 6.)
[5] A copy of this case has been previously provided to the Court. (Doc. #75, Ex. 9.)

these requests are duplicative of an existing document request —Plaintiff propounded an extremely broad document request encompassing precisely this same information through Request No. 4 of Plaintiff's Second Requests.  Kmart has already responded to this request by producing numerous policies applicable to Store Managers, including policies applicable to voluntary and involuntary separations of salaried employees for the years 2003-2005. Additionally, as Kmart has previously advised Plaintiff, Kmart maintains no specific policy regarding "retention" of Store Managers.  Accordingly, Kmart has already produced all information of which it is aware that may have any relevance to Plaintiff's claims.  Requiring Kmart to prepare and produce a corporate designee to testify on this point is burdensome and cumulative, and there is no legitimate reason for Kmart to produce a corporate representative to testify regarding matters that do not exist in the form as requested, and where Plaintiff has already received any potentially responsive information through other less burdensome means.

Moreover, as noted above, Plaintiff has no basis on which to seek information from any entity named in this inquiry other than Kmart.  Those other entities are not defendants and cannot properly be made defendants.  Additionally, the inquiry is improper under Rule 26 because is not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the inquiry is unlimited in time, encompassing corporate information dating as far back as Kmart's inception, from every store and every division of the Company, little, if any, of which has any conceivable relevance to Plaintiff's age discrimination claim.  Moreover, as discussed above, Plaintiff's claims in this matter are limited to the allegation that he was discriminated against because of his age, specifically, being over the age of 40.  Yet, in addition to "policies or philosophies " pertaining to salaried employees over the age of 40, Plaintiff seeks "policies or philosophies " pertaining to long-service employees (those employed 15 or more years, and 5 or more years, as

Plaintiff frames the inquiries).  Courts have long recognized, however, that length of service is not a proxy for age discrimination.  *See e.g.*, *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993) (company's decision to fire older employee who is close to vesting "is not age discrimination).  Therefore, policies or philosophies applicable to long-service employees are irrelevant to Plaintiff's age discrimination claim, and these inquiries should be quashed.

### 4.   Plaintiff is Not Entitled to Region-Wide Discovery.

Like Plaintiff's second inquiry, Plaintiff's fifth inquiry is geographically overbroad, seeking [c]orporate policies or philosophies "regarding retention or resignation of store managers for Western Region/Western District/Western United States from 2003 to the present."  (Doc. #66 at #5.)  Kmart's western region is quite large, covering multiple states and including approximately 25 districts and over 200 stores outside of the one in which Plaintiff was employed.  Information relating to individuals and stores outside Plaintiff's district, District 914 (which is currently comprised of 10 stores), is simply not relevant to Plaintiff's claims.  The experiences of persons outside District 914, which is the only district Rudrude managed, are not at all probative of Rudrude's motivations for his conduct.  Nor is Plaintiff's speculation about a plan to terminate older workers sufficient to justify the expansive discovery he seeks.  *See Sgro*, 2008 U.S. Dist. LEXIS 27175 at *31-34 (excluding at summary judgment testimony of age discrimination by supervisor who was not involved in employment decision at issue).

Moreover, this inquiry again seeks information regarding Kmart Holding Corporation, Sears Corporation and Sears Holdings Corporation, even though no entity other than Kmart Corporation is a defendant and properly subject to discovery in this matter.  Kmart should not and indeed cannot be obligated to prepare and present a witness from a separate corporate entity to testify in this matter.

13

Finally, this inquiry is duplicative of a discovery request Plaintiff previously propounded and that Defendant has answered by providing numerous documents, including those relating to voluntary and involuntary separations.  (*See* Response #4 of Responses to Second Requests).  Indeed, Kmart has already provided to Plaintiff the names of each store manager in District 914 who, for the period from January 1, 2003, separated their employment with Kmart.  Kmart also provided Plaintiff each individual's employment dates, reasons for separation, ages, and their last-known contact information.  (*See* Response #13 to Defendant's Answers to Plaintiff's Interrogatories (Set I)).  Additionally, Kmart has produced any corporate policy specifically relating to termination of Store Managers.  Plaintiff's inquiry fails to indicate the precise information he seeks beyond that which has already been provided.  Accordingly, this inquiry is cumulative and unduly burdensome, and it should be quashed.

### 5.   Plaintiff's Inquiries Into Cost-Containing Measures are Too Vague and Ambiguous to Meet the Reasonable Particularity Standard.

Plaintiff's sixth and seventh inquiries seek "[a]ny and all cost containing measures proposed and implemented pertaining to employees of the store manager-level or higher from 2001 to 2006. " (Doc. #66 at #6-7.)  Like Plaintiff's other inquiries, these inquiries are procedurally deficient under Rule 26, as well as irrelevant to the extent Kmart can discern the inquiry.  First, the language of the inquiries is too vague and ambiguous to permit Kmart to identify and prepare a corporate representative to testify on these topics.  Kmart cannot understand Plaintiff's specific use of the phrase "cost containing measures" in this context.  Indeed, as Kmart repeatedly advised Plaintiff, the request as stated may encompass a great volume of corporate information.  In any retail environment, numerous efforts are continually undertaken to reduce and control costs.  Assuming that Plaintiff is seeking a corporate representative to testify only about cost controlling efforts applicable to the stores in District 914,

which is not at all apparent from this request, Kmart is still unable to reasonably discern what specifically Plaintiff seeks through this inquiry.

For example, Plaintiff could be seeking a corporate designee(s) to testify with regard to "cost-containing measures" as they relate to controlling inventory, shrink, staffing, store maintenance, overhead or other fixed costs.  Kmart cannot present a properly-prepared witness unless the nature of the information sought is reasonably defined, and these inquiries — like the other inquiries set forth in Plaintiff's Amended Notice — are not.  Plaintiff has simply failed to state with reasonable particularity the precise "cost-containing measures" on which Kmart's corporate designee should be prepared to testify, and this inquiry should be quashed.  *See  FDIC v. Wachovia Ins. Serv.*, 2007 U.S. Dist. LEXIS 62538, **8-9 (D. Conn. Aug. 27, 2007) (quashing 30(b)(6) notice for, among other reasons, litigant's failure to describe topics with particularity).

These inquiries are objectionable for the additional reason that they are lacking in any appropriate temporal or geographic limits.  As noted above, Plaintiff's complaints are limited to a two-year time period spanning 2004 and 2005, and information preceding that period is completely irrelevant to his claims.  *Sallis*, 408 F.3d at 478 (affirming district court's decision to limit discovery in Title VII case to one-year period preceding plaintiff's claims).

These inquiries also lack any geographic limit, and, as drafted, seek information from Kmart's inception, from every store and every division of the Company.  With these inquiries Plaintiff is also seeking information pertaining to individuals in positions that Plaintiff did not occupy, areas of the Company in which Plaintiff never worked, and which never applied to Plaintiff — information without any relevance to this case.  Accordingly, Kmart requests that the Court quash these inquiries.

**6.     Plaintiff's Inquiries Regarding Policies and Standards Pertaining to Store Managers is Too Vague and Ambiguous to Meet the Reasonable Particularity Standard.**

Plaintiff's eighth inquiry seeks Defendant's policies and standards issued or promulgated by corporate (all corporations listed in 1 above), expected for store managers from 2001 to the present. (Doc. #66 at #8.) Like Plaintiff's other inquiries, this inquiry is improper and should be quashed. First, the inquiry is overbroad because it, again, purports to seek irrelevant information from corporate entities not party to this case. Additionally, this inquiry also fails to meet the standard of reasonable particularity required by Rule 30(b)(6). It requests information regarding policies and standards for store managers, but fails to specifically state the precise policies and standards on which testimony is sought. Of course, in a retail environment, particularly one as expansive as Kmart, there are any number of policies and standards applicable to store managers, and store managers are responsible for ensuring compliance with the many policies and standards applicable to the store under his or her supervision. By way of example, store managers are responsible for compliance with and enforcement of the Company's personnel, Corporate Compliance, anti-discrimination, workplace safety, inventory control, and many other policies. This inquiry fails to identify the particular policies and standards about which Plaintiff seeks testimony. Depending on the nature of the information sought through this inquiry, Kmart may be required to designate more than one person to testify to these matters. Kmart is entitled, however, to an inquiry sufficiently specific to permit it to designate the appropriate witness(es) to testify. *Wachovia,* 2007 U.S. Dist. LEXIS 62538, at **8-9 (quashing 30(b)(6) notice and granting protective order where litigant failed to describe topics with particularity).

Further, the majority of Kmart's corporate policies have *nothing* to do with Plaintiff's claims. Discovery in this matter has been ongoing for nearly 11 months, and both Plaintiff and

Rudrude, Plaintiff's direct supervisor, have been deposed.  The parties, therefore, have had an opportunity to develop and understand Plaintiff's claims and Kmart's defenses.  In complete disregard of the defined scope of this matter, Plaintiff seeks a corporate designee prepared to testify regarding any and all policies that may have applied to him during his employment with Kmart, even though those policies have nothing to do with his present claims.  Plaintiff's request is nothing more than a fishing expedition and such a burden should not be placed upon Kmart here.  *See Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003) (affirming district court's quashing of subpoenas where it determined litigant was on a "fishing expedition" when her discovery requests sought irrelevant information).

Additionally, this inquiry is overbroad in that it lacks an appropriate time limitation.  As explained above, given that Plaintiff's claims primarily relate to the conduct of one manager, Jerry Rudrude, who only began supervising Plaintiff in June 2004, the appropriate time period for discovery in this matter is no broader than January 1, 2003.  *See e.g.*, *Sallis*, 408 F.3d at 478 (affirming district court's decision to limit discovery in Title VII case to one-year period preceding plaintiff's claims).

This inquiry is also cumulative and burdensome because it is the precise subject of Request No. 9 of Plaintiff's Second Requests.  In response to that request, Kmart has already produced to Plaintiff numerous policies that applied to the Store Manager position.  Therefore, there is no need for Defendant to prepare and produce a corporate designee to testify regarding the same information already produced in written form.  Finally, to extent that the purpose of this inquiry is to determine the expectations that applied to Plaintiff and his position, or the expectations that Plaintiff was not meeting, Plaintiff was afforded an opportunity to obtain this information when his counsel deposed Mr. Rudrude on October 7, 2008.

17

**7.      Plaintiff's Inquiry Into Kmart's Profits is Impermissibly Broad and Duplicative of His Written Discovery.**

Plaintiff's ninth inquiry seeks "[e]stablished goals for individual store's gross or net profits from 2000 to present, including goals established for individual District Managers and individual store managers." (Doc. #66 at #9.)  This inquiry, too, exceeds the bounds of permissible discovery in this case.  In particular, this inquiry seeks profit information regarding every single Kmart store in the U.S. and abroad.  However, as set forth above and in Kmart's Opposition to Plaintiff's Motion to Compel (Doc. # 58), testimony on a nationwide basis is simply unwarranted.  *See e.g.*, *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 729 (8th Cir. 1997) (district court properly limited plaintiff's discovery requests to the division of the company in which he worked).  Rather, Plaintiff cannot properly compare himself to others to whom he is not similarly situated, and the scope of discovery in this matter is appropriately limited to information pertaining to the district in which Plaintiff was employed – District 914. *See* Section III.B.2 above.

Additionally, the inquiry is overbroad in that it is too broad in time, and seeks information regarding District Managers, a position that Plaintiff never held and that is not at issue in this case.  It is also cumulative because Plaintiff has sought and received this precise information relating to District 914 for the years 2003-2005 *via* Request No. 12 of Plaintiff's Second Requests.  In response to this request Kmart produced Net Profit Reports relating to the stores in District 914 from 2003-2005.  Again, Plaintiff has no basis for discovering corporate information for any time period prior to January 2003, and there is no need for Defendant to identify a corporate designee to testify regarding the same information Plaintiff has already received.

**8.    Plaintiff's Request "Profit and Loss Statements" Seeks Irrelevant Information that Kmart Has Already Provided to Plaintiff.**

Plaintiff's final inquiry seeks "Profit and loss statements for Kmart Corporation, Kmart Holding Corporation, Sears Corporation and Sears Holdings Corporation from 2001 to the present."(Doc. #66 at #10.)  Like the foregoing inquiries, this inquiry exceeds the scope of permissible discovery, as there is no basis for the discovery of information from corporate entities not party to this lawsuit.  Nor is there any basis to conduct nationwide discovery. Additionally, for reasons stated in further detail above, the requested time period is far too broad and not reasonably calculated to lead to the discovery of admissible evidence.  Corporate information pre-dating January 2003 can have no relevance to this matter.  *Sallis*, 408 F.3d at 478 (limiting discovery in Title VII case to one-year period preceding plaintiff's claims); *Falcon*, 626 F.2d at 376 (upholding discovery limit to only division).

Further, as Kmart has previously advised Plaintiff, Kmart is a public company and a significant amount of financial information regarding Kmart is publicly available.  Specifically, Kmart's Annual Reports from 1995 through 2003 are available to Plaintiff at www.kmartcorp.com/corp/investor/annual/index.stm.  Additional financial information relating to Kmart from 2004 forward appears in the Annual Report for Sears Holdings Corporation, which is equally available to Plaintiff from the Securities and Exchange Commission, which can be accessed through www.sec.gov.  There is certainly no basis for further discovery into the corporate finances of the entire Kmart Corporation in this matter involving a single plaintiff. Nor is there any reasonable basis to impose upon Kmart the cost or burden or preparing and presenting a witness to testify regarding the Company's corporate finances.[6]  Such information

---

[6] As explained above, Plaintiff is not entitled to corporate information pertaining to Sears Corporation, Sears Holdings Corporation and Kmart Holding Corporation, and such information is irrelevant to the claims in this case.  Kmart notes, however, that financial and historical

has no relevance to this matter.[7]   Therefore, Kmart requests that the Court quash Plaintiff's
Notice.

      **C.**      **As Demonstrated Above, Good Cause Exists Supporting the Entry of a Protective Order.**

      Rule 30(b)(6) of the Federal Rules of Civil Procedure imposes upon litigants an obligation to produce a knowledgeable deponent fully prepared to testify to the areas of inquiry set forth in a proper 30(b)(6) deposition notice. *Mike's Train House*, 2006 U.S. Dist. LEXIS 56349, at *16-17 (citation omitted); *see also Arctic Cat, Inc. v. Injection Research Specialists, Inc.*, 210 F.R.D. 680, 683 (D. Minn. 2002) (sanctioning litigant for producing deponent unable to testify to areas specified in 30(b)(6) notice).   The party propounding the 30(b)(6) notice, however, has a corresponding obligation under the rule to describe the areas of inquiry in the notice "with reasonable particularity" to facilitate the opposing party's designation of a knowledgeable deponent. Fed. R. Civ. P. 30(b)(6).   As explained in greater detail in Section III.B. above, the categories of information set forth in Plaintiff's Amended Notice do not meet that standard.   Moreover, Plaintiff's Amended Notice is unduly burdensome in that it seeks

___

information regarding each of these companies is conveniently available on the Internet, as is similar information pertaining to Kmart. *E.g.*, http://www.searsholdings.com/ www.sec.gov www.kmart.com

[7] Indeed, information relating to Kmart's profits is not relevant to Plaintiff's damages analysis. Plaintiff's expert recently testified that he obtained publicly available financial information regarding Kmart for purposes of providing guidance to a fact-finder regarding any potential punitive damages award.   However, the Age Discrimination in Employment Act does not provide for punitive damages.   Instead, the Act permits "liquidated damages" in an amount equal to the amount owing to a person as a result of a violation of the ADEA.   *See* 29 U.S.C. § 626(b) (incorporating provision of Fair Labor Standards Act providing for liquidated damages in an amount equal to the employee's unpaid minimum wages, or their unpaid overtime compensation, 29 U.S.C. § 216(b)); *Lee v. Rapid City Area Sch. Dist. No. 51-4*, 981 F.2d 316, 333 (8th Cir. 1992).   Because liquidated damages under the ADEA are calculated solely by Plaintiff's backpay, Kmart's profit information is irrelevant to an analysis of any component of Plaintiff's potential damages award.

discovery of a broad range of information completely irrelevant to the claims in this case. *See* Fed. R. Civ. P. 26(b)(1) (parties may obtain discovery as to any matter that is *relevant* to any party's claims or defenses) (emphasis added).

It is also significant that considerable discovery has already occurred. Specifically, Defendant has answered 24 multipart interrogatories and over 50 document requests, resulting in the production of over 3,000 pages of documents. Further, Plaintiff and his former supervisor, Jerry Rudrude – the people with the most direct firsthand knowledge of the matters at issue in this case – have already been deposed. Plaintiff also recently deposed Regional Human Resources Manager, Aimee Grabau. Plaintiff's Amended Notice is burdensome and duplicative, and good cause exists supporting an Order precluding the discovery Plaintiff seeks. *FDIC v. Wachovia Ins. Servs.*, 2007 U.S. Dist. LEXIS 62538 at **8-9 (quashing 30(b)(6) notice and granting protective order where litigant failed to describe topics with particularity and "considerable discovery" had already occurred, including depositions of witnesses with first-hand knowledge of facts).

## IV.   CONCLUSION

Rather than describing his areas of inquiry with "painstaking specificity" as required by case law interpreting the Federal Rules of Civil Procedure, Plaintiff's Amended Notice sets forth broad-ranging inquiries replete with vague, ambiguous and indefinite terms. None of Plaintiff's designated areas of inquiry is sufficiently tailored to provide Kmart the required guidance in designating an appropriate witness to testify. Indeed, should Plaintiff's overbroad inquiries be permitted, Kmart will be required to spend significant and unnecessary time and expense to prepare its witnesses to testify about wide-ranging corporate information completely irrelevant to the claims asserted in this matter. Kmart cannot present a properly-prepared witness unless the nature of the information sought is reasonably defined and focused.

Apart from his failure to define the areas of inquiry set forth in his 30(b)(6) deposition notice with the requisite degree of specificity, Plaintiff's Notice also includes duplicative and overbroad categories seeking volumes of corporate information that is irrelevant to the claims asserted in this single-plaintiff case, or that has already been provided to him. Therefore, Plaintiff's Notice is procedurally deficient, and Kmart respectfully requests an order quashing the Notice. *See Krasney v. Nationwide Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 90876, *9 (D. Conn. Dec. 11, 2007) (noting that "federal judges [do] not hesitat[e] to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) Notices").

Date: October 31, 2008

/s/ Jane Wipf Pfeifle
Jane Wipf Pfeifle
**LYNN JACKSON SHULTZ & LEBRUN, P.C.**
First National Bank Building, 8th Floor
909 Saint Joseph Street
P.O. Box 8250
Rapid City, SD 57709-8250
Telephone: 605.342.2592
Facsimile: 605.342.5185
Email: jpfeifle@lynnjackson.com

and

Kathryn Mrkonich Wilson (MN #283605)
Susan K. Fitzke (MN #294032)
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612.630.1000
Facsimile: 612.630.9626
Email: kwilson@littler.com
            sfitzke@littler.com

**ATTORNEYS FOR DEFENDANT**

22