UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DOUG MURPHY, | ) | CIV. 07-5080-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER ON PLAINTIFF'S MOTION |
| | ) | TO COMPEL [DOCKET 57] |
| KMART CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTRODUCTION**

This matter is before the court pursuant to plaintiff Doug Murphy's
motion to compel Kmart Corporation to completely answer his first set of
interrogatories and first request for production of documents.  [Docket 57].
Mr. Murphy has represented to the court that he has made a good-faith effort
to resolve this discovery dispute without the court's intervention.  Id.
Mr. Murphy's motion to compel was referred to this magistrate judge for
resolution pursuant to Chief Judge Karen E. Schreier's order dated
November 3, 2008.  See Docket 94.

**FACTS AND PROCEDURAL HISTORY**

The court will limit the following recitation to those facts relevant to this
discovery dispute.  Mr. Murphy brought suit in this court against Kmart

Corporation ("Kmart"),[1] alleging one count of age discrimination and one count of intentional infliction of emotional distress stemming from the loss of his employment as a Kmart store manager on November 15, 2005.[2]  Id.  Mr. Murphy had been employed at Kmart for approximately thirty years, from May 1975 to October or November 2005,[3] and, at the time his employment was terminated, was a store manager at the Rapid City Kmart location.  Id.  Mr. Murphy alleges that his supervisor, Kmart district manager Jerry Rudrude, constructively discharged Mr. Murphy by creating intolerable working conditions designed to force Mr. Murphy to resign.  Id.  Mr. Murphy alleges that Mr. Rudrude subjected him "to open criticism and verbal abuse before subordinates," gave him "poor-performance appraisals that were unwarranted," subjected him "to a disciplinary proceeding which was unwarranted," and

---

[1]Mr. Murphy's civil complaint with jury demand, filed on November 5, 2007, names Sears Holdings Corporation, doing business as Kmart Corporation, as the defendant.  See Docket 1.  However, on January 8, 2008, the parties filed a stipulated motion to dismiss with prejudice all claims against Sears Holdings Corporation and to amend the case caption to reflect that Kmart Corporation would be the only named defendant in this suit.  See Docket 19.  On January 9, 2008, the district court granted the parties' stipulated motion in its entirety.  See Docket 20.

[2]On May 8, 2006, prior to initiating the current lawsuit in federal court, Mr. Murphy filed a complaint of age discrimination against Kmart with the Equal Employment Opportunity Commission and the South Dakota Division of Human Rights.  See Dockets 1, 8.

[3]Kmart states that Mr. Murphy resigned on October 29, 2005.  See Docket 8.  However, Mr. Murphy states that his employment ended on November 15, 2005.  See Docket 1.

2

required him "to meet heightened performance standards."  Id.  Mr. Murphy claims that Kmart knew or should have known of the harassment, yet failed to take prompt remedial action, and that Kmart willfully and intentionally discriminated against Mr. Murphy on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*.  Id.  Mr. Murphy also claims that he suffered severe emotional distress as a result of the deliberate actions of Kmart and Mr. Rudrude.  Id.  Mr. Murphy seeks to recover liquidated damages, compensatory damages, punitive damages, attorney's fees, costs, and front pay or, if appropriate, reinstatement of employment with retroactive restoration of benefits.  Id.

Kmart denies Mr. Murphy's claims in their entirety and asserts numerous defenses.  See Docket 8.  Kmart moves to dismiss the complaint on the ground that Mr. Murphy failed to state a claim upon which relief may be granted and failed to comply with the applicable statute of limitations.  Id. Kmart also argues that Mr. Murphy's claims are barred or limited by the doctrines of waiver, estoppel, accord and satisfaction, ratification, laches and/or presumption and by the exclusivity provisions of the South Dakota Worker's Compensation Act.  Id.  Kmart alleges that it acted in good faith based upon reasonably necessary business concerns and that Mr. Murphy's misconduct would have resulted in his termination.  Id.  Kmart maintains that, if Mr. Murphy suffered damages, those damages were the result of his own

3

intentional or negligent acts or omissions.  Id.  Kmart also charges Mr. Murphy

with failing to mitigate his damages, failing to pursue the preventative and

corrective opportunities offered by Kmart, and failing to comply with

jurisdictional, procedural, and administrative prerequisites for filing his

complaint.  Id.

On March 25, 2008, Mr. Murphy served Kmart with his first set of

interrogatories and first request for production of documents.  See Docket 57.

Relevant to this discovery dispute are interrogatory number 18,[4] interrogatory

---

[4]Interrogatory number 18 asks Kmart to do the following:

State whether any of Defendant's employees, former employees, or prospective employees at any time between January 1, 2003, and the present date, have filed charges or notices of intent to file suit with the United States Department of Labor or the Equal Employment Opportunity Commission, or a judicial complaint, based in whole or in part on the Age Discrimination in Employment Act of 1967.  If so, for each charge, notice, and complaint, state:

    a.     The date when the charge, notice, or action was filed;
    b.     The office of the United States Department of Labor, or the Equal Employment Opportunity Commission, or the court in which the matter was filed, and the control number, civil number, or other numerical designation assigned;
    c.     The name of the complainant or Plaintiff, and the name of the employer;
    d.     The current status of the charge, notice, or complaint, if it is currently pending; and
    e.     The disposition of the charge, notice, or complaint, if it is no longer pending.

See Docket 57, Exhibit A.

number 23,[5] and request for production number 15.[6]  Id.  On or about April

29, 2008, Kmart served its responses to Mr. Murphy's discovery requests.[7]  See

Docket 57, Exhibit A.  With respect to interrogatory numbers 18 and 23 and

request for production number 15, Kmart stated that it was investigating

Mr. Murphy's requests and would file a supplemental response thereafter.  See

Docket 57, Exhibits A & B.  On or about July 14, 2008, Kmart served its first

set of supplemental answers to Mr. Murphy's discovery requests.[8]  See Docket

57, Exhibits C & D.  With respect to interrogatory number 18, Kmart listed the

---

[5]Interrogatory number 23 asks Kmart to "[i]dentify all persons making complaints of or raising concerns about age discrimination, retaliation, or inappropriate conduct by Jerry Rudrude.  For the purpose of this Interrogatory, complaints include any formal or informal complaints raised by any employee of Defendant employer."  See Docket 57, Exhibit A.

[6]Request for production number 15 asks Kmart to produce "[a]ny and all documents relating to any criminal or civil lawsuit or administrative proceeding, other than the present action, EEOC complaint, local human rights complaint, or labor complaint which Defendant has been involved in or a party to since 2002."  See Docket 57, Exhibit B.

[7]Kmart objected to each and every interrogatory and request for production, with the exception of request for production number 16, on various grounds, most common of which were that the request was "vague, ambiguous, unduly burdensome, overbroad and not reasonably calculated to lead to the discovery of relevant or admissible evidence" and/or that the request sought information protected by the attorney-client privilege or work product doctrine.  See Docket 57, Exhibits A & B.  Request for production number 16 asked Kmart to produce a copy of the employee handbook in effect in 2005.  See Docket 57, Exhibit B.

[8]In its supplemental response, Kmart continued to object to each request on various grounds, stating plainly that, in providing responses, Kmart did not intend to waive its objections.  See Docket 57, Exhibits C, D, & E.

charges of age discrimination filed against Kmart from January 1, 2003, to the present; however, Kmart limited its answer to lawsuits filed only in Kmart's District 917, the district in which Mr. Murphy worked.  See Docket 57, Exhibit C.  Kmart provided no supplemental answer to interrogatory number 23.  See id.  With respect to request for production number 15, Kmart referenced its supplemental response to interrogatory number 18, in which Kmart limited its answer to lawsuits filed in Kmart's District 917.  See Docket 57, Exhibit D.

On or about September 28, 2008, Kmart served its second set of supplemental answers to Mr. Murphy's discovery requests.  See Docket 57, Exhibit E.  With respect to interrogatory number 18, Kmart stated that no other lawsuit alleging age discrimination, with the exception of Mr. Murphy's present suit and those previously listed, were filed against Kmart in *District 917*[9] from January 1, 2003, to the present.  Id.  With respect to interrogatory number 23, Kmart listed only the *formal* complaints of age discrimination referring or relating to Jerry Rudrude.  Id.  Kmart provided no additional

─────────────────────

[9]Kmart actually stated "District 914"; however, the court assumes Kmart intended to refer to District 917.  See Docket 57, Exhibit E.  That being said, there is some confusion about whether Mr. Murphy worked within District 917 or District 914.  Mr. Murphy refers to District 917 in his memorandum supporting the motion to compel, see Docket 59, but Kmart consistently refers to District 914 in its response, see Docket 76.  The court cannot account for this discrepancy; however, there is some evidence that Kmart changed the stores that comprised the district several times, see Dockets 76 & 96.  Perhaps the Rapid City store at which Mr. Murphy was employed was once part of District 917 and then became part of District 914, or vice versa.  For the sake of consistency, the court will refer to District 917 throughout this opinion.

supplemental response for request for production number 15.

On October 1, 2008, Mr. Murphy filed a motion to compel Kmart to completely answer interrogatory numbers 18 and 23 and request for production number 15.  [Docket 57].  With respect to interrogatory number 18, Murphy moves the court to order Kmart to identify *all* charges, notices of intent to sue, and judicial complaints of age discrimination filed against Kmart from January 1, 2003, to the present, without limit to the place of filing.  See Docket 59.  For request for production number 15, Mr. Murphy moves the court to order Kmart to produce copies of all of the deposition and trial transcripts from the lawsuits and claims identified in interrogatory number 18, again without limit to the place of filing.  Id.  Finally, for interrogatory number 23, Mr. Murphy moves the court to order Kmart to identify all persons making *any* complaint, *formal or informal*, or raising any concern of age discrimination, retaliation, or inappropriate conduct by Jerry Rudrude.  Id.  Mr. Murphy requests that, if the court grants his motion to compel in whole or in part, the court would set a deadline by which Kmart must comply with the court's order and would allow Mr. Murphy 90 days[10] or some other reasonable period of time

---

[10]In his memorandum in support of the motion to compel, Mr. Murphy initially requested a 45-day period to complete discovery.  See Docket 59. However, in his reply brief, Mr. Murphy revised his request to a 90-day period. See Docket 96.

to complete discovery once Kmart has complied with the court's order.  See Docket 96.

Kmart opposes Mr. Murphy's motion to compel on the following grounds: (1) Mr. Murphy seeks discovery that is not relevant to his claims and will not lead to the discovery of admissible evidence in this case; (2) Mr. Murphy's motion to compel is untimely and in violation of the district court's scheduling order; and (3) Mr. Murphy's request for information regarding complaints made against Jerry Rudrude (interrogatory number 23) is moot as it has been resolved.  See Docket 76.  Kmart argues that Mr. Murphy should not be allowed to engage in a "nation-wide fishing expedition" "[w]ithout some specific allegations regarding employees outside District 917 who were involved in the circumstances of his departure from Kmart."  Id.

**DISCUSSION**

**A.    Whether the Information Sought is Discoverable**

**1.    Scope of Discovery Under Rule 26**

Federal Rule of Civil Procedure 26(b)(1) sets forth the standard governing the scope of discovery in civil cases:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in

the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

<u>See</u> Fed. R. Civ. P. 26(b)(1).

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. ... In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the

circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Id. "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D.Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1) advisory

10

committee's note.  Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit..."  See Fed. R. Civ. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D.Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

## 2.    Interrogatory No. 18 and Request for Production No. 15

With respect to interrogatory number 18, Murphy seeks nationwide discovery of all charges, notices of intent to sue, and judicial complaints of age discrimination filed against Kmart from January 1, 2003, to the present, without limit to the place of filing.  See Docket 59.  For request for production number 15, Mr. Murphy seeks copies of all of the deposition and trial transcripts from the lawsuits and claims identified in interrogatory number 18, again without limit to the place of filing.  Id.  Kmart objects on the ground that

such information is irrelevant to Mr. Murphy's claims, alleging that "Murphy has failed to even attempt to demonstrate how information regarding age discrimination claims by employees in other states, working in different positions, or involving different supervisory personnel is reasonably related to his individual disparate treatment claims focused on one manager, Jerry Rudrude." See Docket 76.

As Kmart has already provided the requested information for District 917, the issue before the court is whether Mr. Murphy is entitled to nationwide or companywide information regarding other age discrimination claims filed against Kmart by its employees. This exact issue was addressed by the Kansas district court in Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 649 (D.Kan. 2004). In Owens, plaintiff asserted claims of sex discrimination under Title VII of the Civil Rights Act of 1964 and age discrimination under the Age Discrimination in Employment Act arising from her demotion to a lower-grade managerial position within defendant's Business Support Services unit, a sub-unit of defendant's Global Markets Group. Id. at 651. Plaintiff served defendant with interrogatories and requests for production. Id. Defendant objected to two requests, interrogatory number 3 and request for production number 17, on the ground that the requests were overly broad and sought irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Id. at 652. Interrogatory number 3 requested that the

defendant identify all instances within the past three years when it had been the "subject of any investigation by any local, state, or federal agency as to its employment practices, including any charges of age discrimination and sex discrimination, other than those filed by Plaintiff." Id. at 651-52.  Request for production number 17 asked for "[a]ny and all documents relating to other charges of age discrimination and/or sex discrimination filed against defendant with any state or federal regulatory body or court," again within the past three years.  Id. at 652.

The court first determined that the requested information was relevant to plaintiff's claims.  Id. at 653.  The court noted that, in employment discrimination cases, the scope of discovery is broad and depends heavily on the particular circumstances of the case.  Id. at 652.  The court held that, even in single-plaintiff cases, information that may establish a pattern of discrimination by an employer is discoverable, and thus, "[w]hen the motive or intent of a defendant employer is at issue, information concerning its conduct towards employees other than the plaintiff is relevant." Id. at 653.

The court also addressed defendant's argument that plaintiff's discovery requests were overly broad and should be limited in scope to the specific geographic location and work unit in which the plaintiff worked, the Business Support Services unit.  Id.  The court provided the following standard for determining the geographic scope of discovery:

13

When addressing overly broad objections to discovery requests, courts have limited the geographic scope of discovery. In non-class action employment discrimination cases, the standard for determining the geographic scope of discovery focuses on the source of the complained discrimination-the employing unit or work unit. In the absence of any evidence that there were hiring or firing practices and procedures applicable to all the employing units, discovery may be limited to plaintiff's employing unit. Discovery may be expanded from the Plaintiff's employing unit, however, if the plaintiff can show the requested information is particularly cogent to the matter or if the plaintiff can show a more particularized need for, and the likely relevance of, broader information.

In determining the appropriate employing unit of the plaintiff alleging employment discrimination, courts look to the level of the supervisor or supervisors who are primarily responsible for the employment decision regarding the plaintiff and other similarly-situated employees. The rationale is that the motive and intent of the supervisors who made the employment decisions relating to the plaintiff and other employees is relevant to determining whether the employment decision was discriminatory.

Id. at 653-54 (internal citations, quotation marks, and footnotes omitted).

In applying this standard, the court determined that the Business Support Services unit and not the larger Global Markets Group was the appropriate work unit for purpose of defining the geographic scope of discovery. Id. at 655. In reaching this decision, the court found persuasive the fact that the key supervisors who made the decision to demote plaintiff were employed within the defendant's Business Support Services unit. Id. at 654. The court also was persuaded by the fact that it was an internal news bulletin specific to defendant's Business Support Services unit that contained the notice that plaintiff's former position had been filled. Id. The court noted that there was

14

no evidence that employees at defendant's Global Market Group level participated in the decision to demote plaintiff and fill her former position with a younger, male employee.  Id.  The court found that plaintiff failed to present any evidence to justify discovery beyond the limits of defendant's Business Support Services unit and failed to show a particularized need for expanding discovery to the Global Markets Group.  Id. at 655.

In Burns v. Hy-Vee, Inc., 2002 WL 31718432 (D.Minn. Nov. 21, 2002), a case where plaintiff sued defendant for race discrimination over his alleged retaliatory discharge, the Minnesota district court affirmed the magistrate's order compelling the defendant to completely respond to, in relevant part, plaintiff's interrogatory number 12.  Id. at *1.  Interrogatory number 12 asked the defendant to state whether it had ever been named as a defendant in a civil lawsuit or as a respondent in a charge of discrimination involving allegations of race discrimination or retaliation and, if so, to identify all documents related to such allegations.  Id. at *1 n. 1.  This interrogatory was limited in geographic scope to defendant's Cherokee division, which encompassed a 34-store region that included the store in which plaintiff worked as an assistant manager, and was further limited to a three-year time period.  Id. at *1 n. 4, *3.  Defendant appealed from the magistrate's order, arguing that the requested discovery was overly broad and should be limited to the particular store in which plaintiff worked.  Id. at *1.

15

The district court held that the Cherokee division was the appropriate geographic unit for discovery.  Id. at *3.  The court noted that, although discovery under Rule 26(b)(1) is broad in scope, it is not without limits:

> Generally, a plaintiff alleging disparate treatment is not entitled to company-wide discovery absent a showing of a particular need and relevance of the requested information. Company-wide discovery is usually inappropriate, because a claim of disparate treatment relies on the employer's motivation for the adverse employment action at issue.  When the decision is made locally, discovery is properly limited to the plaintiff's local work unit.
> However, where a plaintiff can show that the employment decision at issue was made by someone outside the local work unit, he is entitled to broader discovery.

Id. at *2 (additional citations omitted).

The court determined that plaintiff had shown a particularized need for division-wide discovery because, although it was unclear who specifically made the decision to terminate plaintiff, the defendant did not deny that the decision involved individuals beyond the local store.  Id. at *1, *3.  The court reasoned that restricting discovery to the Cherokee division for a limited period of time was not unduly burdensome to the defendant.  Id. at *3.

The Eighth Circuit in Carmen v. McDonnell Douglas Corp., 114 F.3d 790 (8th Cir. 1997), addressed the issue of the proper geographic scope of discovery. In Carmen, the defendant laid off plaintiff as part of a reduction in force of its management staff.  Id. at 791.  Plaintiff sued the defendant under the Age Discrimination in Employment Act.  Id.  A discovery dispute arose between the

16

parties, and plaintiff filed a motion to compel with the district court.  Id.  The
district court granted, in relevant part, plaintiff's request for information
regarding defendant's past lay-offs, or past reductions in force, but limited the
geographic scope of the request to the McDonnell Douglas Aircraft Company,
the component company of McDonnell Douglas Corporation where plaintiff
worked.  Id. at 792.  The Eighth Circuit held that the district court did not
abuse its discretion in limiting plaintiff's request to the division in which he
worked.  Id.  The court reasoned that "[c]ompany-wide statistics are usually not
helpful in establishing pretext in an employment-discrimination case, because
those who make employment decisions vary across divisions."  Id.  The court
found that plaintiff had not shown a particularized need for regional or national
company-wide information.  Id.

In contrast, the magistrate court for the District of Nebraska allowed
nationwide discovery in Woodmen, supra.  The EEOC brought suit against the
defendant on behalf of Louella Rollins alleging gender discrimination, sexual
harassment, hostile work environment, and retaliation surrounding Rollins'
demotion.  Woodmen, 2007 WL 1217919 at *1.  A discovery dispute arose
between the parties with regard to, in relevant part, plaintiffs' interrogatory
numbers five and six.  Id. at *2.  Interrogatory number five sought the identity
of each individual who had filed an internal complaint of gender or sex-based
harassment or discrimination during a specified time period.  Id.  Interrogatory

17

number six sought information on any civil or administrative action involving gender or sex-based harassment or discrimination in which the defendant or any of its related entities was named a party, again within a specified time period.  Id.  Defendant had objected to both requests on the ground that the discovery was overly broad and irrelevant because this was not a class action suit and plaintiffs did not allege a pattern of discrimination.  Id.  Plaintiffs argued that the requested information was relevant to the issue of intent and pretext and that country-wide discovery was particularly relevant because Rollins was a state manager supervised by employees in the defendant's Omaha headquarters.  Id.

The court set forth the standard for determining the geographic scope of discovery in a discrimination lawsuit, as follows:

> Evidence of sexual harassment directed at employees other than the plaintiff is relevant to show a hostile work environment. Further, background evidence of an employer's discriminatory policies or practices may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive.  However, discovery is typically limited to the same form of discrimination claimed by plaintiff, to the same department or agency where plaintiff worked, and to a reasonable time before and after the discrimination complained of. Additionally, in the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination the employing unit or work unit. To move beyond that focus the plaintiff and the EEOC must show a more particularized need and relevance.

Id. at *3 (internal quotation marks and citations omitted).

In applying this standard to the particular circumstances of the case, the

18

court found that plaintiffs had made the requisite showing for nationwide discovery and ordered the defendant to provide complete answers to the two interrogatories. Id.

In light of the above case law, the court finds that the information requested by Mr. Murphy is relevant to his claims. Mr. Murphy has shown a particularized need for discovery of division-wide information, but not for nationwide information. Mr. Murphy alleges that "Kmart instructed all its district managers in the western division of the United States to eliminate the older store managers and replace them with younger more aggressive managers." See Docket 96. Mr. Murphy buttresses this claim by providing excerpts of deposition transcripts of several management-level Kmart employees who recalled comments made by Rick Carr, then Kmart's vice-president for its western division. Id. At a meeting in San Diego, California, in April of 2004 for all the district and regional managers for the western United States, Mr. Carr allegedly made comments to the effect that "we" needed younger, more aggressive employees and needed to "get rid" of the older managers and that he wanted a particular manager "gone" because he was "an old guy." Id. Mr. Rudrude attended this meeting, although he stated that he was not paying attention to Mr. Carr. Id. The court finds that Mr. Murphy has shown a need for division-wide discovery in light of his claim that Mr. Rudrude

19

was following Mr. Carr's orders to eliminate older store managers.[11]  Id.
Further, the court finds that the burden on Kmart to respond to these requests
is sufficiently mitigated by limiting discovery to a particular geographic unit
over a particular period of time and to similar types of claims.

Mr. Murphy has not shown a need for nationwide discovery, however.
Mr. Murphy has presented no evidence that any other division manager or top-
Kmart executive made ageist comments or directives.  There is no evidence that
Mr. Carr was told or encouraged to make such comments by any top-
management personnel.  Absent such evidence, the court orders Kmart to
completely answer Mr. Murphy's interrogatory number 18 with respect to
Kmart's western division by January 23, 2009.  The court further orders Kmart
to fully comply with Mr. Murphy's request for production number 15, again
with respect to Kmart's western division, by January 23, 2009.

### 3.    Interrogatory No. 23

Mr. Murphy moves the court to require Kmart to completely answer
interrogatory number 23 by identifying all persons making *any* complaint,
*formal or informal*, or raising any concern of age discrimination, retaliation, or
inappropriate conduct by Jerry Rudrude.  See Docket 59.  Kmart maintains

---

[11]The court notes that, on several occasions between 2001 and 2005,
Kmart changed the composition of District 917, the district over which
Mr. Rudrude was a manager.  See Docket 96.  Thus, it is not reasonable to
limit discovery to District 917, when the stores that comprised that district
have changed over time.

that it "has provided responsive information for each and every complaint or 'concern' of age discrimination and retaliation about which it was aware that had been raised against Mr. Rudrude," thus making Mr. Murphy's motion to compel with respect to this interrogatory moot.  See Docket 76.  However, Mr. Murphy, through his own initiative, has identified an informal complaint made by Brenda Manning, a store manager within District 917, against Mr. Rudrude via e-mail–a complaint not identified by Kmart as of yet.  In light of this discovery, the court orders Kmart to conduct reasonable investigation into this issue and to completely respond to interrogatory number 23 by January 23, 2009.  Interrogatory number 23 will not be limited in geographic scope as it is possible that Kmart employees with information on this issue may have transferred to other divisions.

**B.    Whether Mr. Murphy's Motion is Timely**

Kmart argues that Mr. Murphy's motion is untimely and should be dismissed because it runs afoul of the district court's January 9, 2008, scheduling order which sets the discovery deadline for October 1, 2008.  See Dockets 76 & 21.  The scheduling order stated that "[m]otions to compel discovery shall be filed no later than ten working days after the subject matter of the motion arises."  See Docket 21.  Kmart states that it informed Mr. Murphy of its objections to the scope of discovery as early as July 14, 2008, when it served its first set of supplemental responses to Mr. Murphy's

discovery requests, and, thus, Mr. Murphy should have filed his motion to compel by July 28, 2008.  <u>See</u> Docket 76.  Kmart maintains that it has never wavered from this position.  <u>Id.</u>

Mr. Murphy argues that he has made multiple attempts to resolve this discovery dispute without the court's intervention.  <u>See</u> Docket 96. Mr. Murphy states that, on several occasions after July 28, 2008, he contacted Kmart regarding other discovery requests still outstanding and was able to resolve them.  <u>Id.</u>  Mr Murphy filed his motion to compel only a few days after Kmart served its second set of supplemental responses.  <u>Id.</u>

The court finds that Mr. Murphy's motion is timely.  The district court's scheduling order also stated that "[m]otions to compel discovery shall not be filed until after the parties have complied with D.S.D. LR 37.1."  <u>See</u> Docket 21. Local Rule 37.1 requires parties to make a good-faith effort to resolve any discovery dispute prior to seeking resolution by the court.  <u>See</u> D.S.D. LR 37.1. The court is satisfied that the delay in filing Mr. Murphy's motion to compel was due to his good-faith efforts to work with Kmart to address various discovery issues.  In fact, Mr. Murphy states that he was successful in working with Kmart to informally resolve disputes regarding other discovery requests, no small feat given that Kmart objected to almost every interrogatory and request for production served by Mr. Murphy.  <u>See</u> Docket 96.  The court will not penalize Mr. Murphy for filing his motion to compel on October 1, 2008,

particularly since Kmart provided its second set of supplemental responses just a few days earlier on September 28, 2008.  By waiting until Kmart served its second and final set of supplemental responses, Mr. Murphy was able to identify those few discovery requests still at issue and file one motion to compel rather than multiple, separate motions.

Kmart also objects to Mr. Murphy's request that he be allowed 45 days[12] or some other reasonable period to complete discovery once Kmart has complied with the court's order.  See Docket 76.  The current discovery deadline set by the district court in this case is February 17, 2009.  See Docket 111.  This court is not at liberty to set deadlines that run afoul of the district court's scheduling order.  If either party believes that the discovery deadline should be moved on the basis of the rulings contained in this opinion, either party may make an appropriate motion to the district court to extend the deadline.

**C.     Sanctions**

Rule 37(a)(5) of the Federal Rules of Civil Procedure states that if the court grants a motion to compel, or if the requested discovery is provided after a motion to compel has been filed, "the court ***must***, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the

---

[12]In his reply brief, Mr. Murphy revises his initial request for 45 days to complete discovery in favor of 90 days to complete discovery.  See Docket 96.

23

motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." See Fed. R. Civ. P. 37(a)(5) (emphasis supplied). The award of expenses is mandatory unless the court finds that the moving party failed to confer in good faith with the responding party prior to filing the motion, the responding party's refusal to respond was substantially justified, or other circumstances make an award of expenses unjust. Id.

Here, Mr. Murphy never requested that the court grant sanctions on his behalf in the event the court granted his motion to compel. However, the court is required to consider the appropriateness of sanctions under Rule 37 even without a request from a party.

Given the state of the law as described above regarding the geographic scope of discovery in discrimination cases, and the fact that Kmart did provide the information requested with regard to District 917, the court will not order Kmart to pay sanctions. Although Kmart's blanket-objection approach to discovery is most definitely **not** "substantially justified," nevertheless the *actual extent* of Kmart's compliance with Mr. Murphy's discovery requests is much closer to being "substantially justified." But for the comments of Kmart's vice-president for its western division, Rick Carr, Kmart's provision of discovery for District 917 alone would probably have sufficed in this case. Accordingly, no sanctions will issue.

24

**CONCLUSION**

The court hereby

ORDERS that Mr. Murphy's motion to compel [Docket 57] shall be granted in part and denied in part in accordance with the above opinion.

IT IS FURTHER ORDERED that Kmart's request for costs and attorney fees incurred by responding to the instant motion, see Docket 76, is denied.

**NOTICE TO PARTIES**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72(a).  Failure to file timely objections will result in the waiver of the right to appeal matters not raised in the objections.  Id.  Objections must be timely and specific in order to require review by the district court.

Dated December 27, 2008.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

25