UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DOUG MURPHY, | ) | CIV. 07-5080-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER ON DEFENDANT'S MOTION |
| | ) | TO COMPEL THIRD-PARTY |
| KMART CORPORATION, | ) | AFFIDAVITS [DOCKET 86] |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the court pursuant to defendant's motion to compel

plaintiff to produce third-party witness affidavits.  [Docket 86].  Defendant has

represented to the court that it has made a good-faith effort to resolve this

discovery dispute without the court's intervention.  See Docket 87.  Defendant's

motion to compel was referred to this magistrate judge for resolution pursuant

to Chief Judge Karen E. Schreier's order dated November 3, 2008.  [Docket 94].

**FACTS AND PROCEDURAL HISTORY**

The court will limit the following recitation to those facts relevant to this

discovery dispute.  Mr. Murphy brought suit in this court against Kmart

Corporation ("Kmart"),[1] alleging one count of age discrimination and one count

---

[1]Mr. Murphy's civil complaint with jury demand, filed on November 5,
2007, names Sears Holdings Corporation, doing business as Kmart
Corporation, as the defendant.  See Docket 1.  However, on January 8, 2008,
the parties filed a stipulated motion to dismiss with prejudice all claims against

of intentional infliction of emotional distress stemming from the loss of his employment as a Kmart store manager on November 15, 2005.[2]  Id.

Mr. Murphy had been employed at Kmart for approximately thirty years, from May 1975 to October or November 2005,[3] and, at the time his employment was terminated, was a store manager at the Rapid City Kmart location.  Id.

Mr. Murphy alleges that his supervisor, Kmart district manager Jerry Rudrude, constructively discharged Mr. Murphy by creating intolerable working conditions designed to force Mr. Murphy to resign.  Id.  Mr. Murphy alleges that Mr. Rudrude subjected him "to open criticism and verbal abuse before subordinates," gave him "poor-performance appraisals that were unwarranted," subjected him "to a disciplinary proceeding which was unwarranted," and required him "to meet heightened performance standards."  Id.  Mr. Murphy claims that Kmart knew or should have known of the harassment, yet failed to take prompt remedial action, and that Kmart willfully and intentionally

_____

Sears Holdings Corporation and to amend the case caption to reflect that Kmart Corporation would be the only named defendant in this suit.  See Docket 19.  On January 9, 2008, the district court granted the parties' stipulated motion in its entirety.  See Docket 20.

[2]On May 8, 2006, prior to initiating the current lawsuit in federal court, Mr. Murphy filed a complaint of age discrimination against Kmart with the Equal Employment Opportunity Commission and the South Dakota Division of Human Rights.  See Dockets 1, 8.

[3]Kmart states that Mr. Murphy resigned on October 29, 2005.  See Docket 8.  However, Mr. Murphy states that his employment ended on November 15, 2005.  See Docket 1.

2

discriminated against Mr. Murphy on the basis of age, in violation of the Age
Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*.  Id.  Mr. Murphy
also claims that he suffered severe emotional distress as a result of the
deliberate actions of Kmart and Mr. Rudrude.  Id.  Mr. Murphy seeks to recover
liquidated damages, compensatory damages, punitive damages, attorney's fees,
costs, and front pay or, if appropriate, reinstatement of employment with
retroactive restoration of benefits.  Id.

Kmart denies Mr. Murphy's claims in their entirety and asserts
numerous defenses.  See Docket 8.  Kmart moves to dismiss the complaint on
the ground that Mr. Murphy failed to state a claim upon which relief may be
granted and failed to comply with the applicable statute of limitations.  Id.
Kmart also argues that Mr. Murphy's claims are barred or limited by the
doctrines of waiver, estoppel, accord and satisfaction, ratification, laches
and/or presumption and by the exclusivity provisions of the South Dakota
Worker's Compensation Act.  Id.  Kmart alleges that it acted in good faith based
upon reasonably necessary business concerns and that Mr. Murphy's
misconduct would have resulted in his termination.  Id.  Kmart maintains that,
if Mr. Murphy suffered damages, those damages were the result of his own
intentional or negligent acts or omissions.  Id.  Kmart also charges Mr. Murphy
with failing to mitigate his damages, failing to pursue the preventative and
corrective opportunities offered by Kmart, and failing to comply with

3

jurisdictional, procedural, and administrative prerequisites for filing his

complaint.  Id.

On December 17, 2007, Kmart served Mr. Murphy with its first set of

requests for production of documents and its first set of interrogatories.  See

Docket 88, Exh. 1 & 2.  Request for production number eight sought "[a]ll

statements from any person that refer or relate to the claims alleged in the

Complaint in this matter."  See Docket 88, Exh.1.  Interrogatory number five

asked Mr. Murphy to "[i]dentify each person known or believed by you to have

personal knowledge of any of the facts at issue or involved in the above-

captioned lawsuit or any of the events underlying the allegations in the

Complaint, Answer, or any other pleading, and separately state the facts and

observations within each such person's knowledge."  See Docket 88, Exh. 2.

Interrogatory number six asked Mr. Murphy to "[i]dentify each person from

whom written and signed (or otherwise adopted or approved), recorded or

transcribed statements or reports have been secured with respect to any of the

matters relating to the allegations in the Complaint, or Answer and for each

person identified, identify each document that evidences such statements or

reports."  Id.

On February 15, 2008, Mr. Murphy served his response to Kmart's first

set of requests for production of documents and first set of interrogatories.  See

Docket 88, Exh. 4; Docket 115, Exh. 1.  In response to interrogatory number

five, Mr. Murphy identified approximately 82 individuals with personal knowledge of the subject matter of this litigation.  <u>See</u> Docket 115, Exh. 1.  In response to interrogatory number six, Mr. Murphy stated that there was no such person from whom written statements have been obtained other than various witness depositions from other Kmart litigation.  <u>Id.</u>  In response to request for production number eight, Mr. Murphy referenced a note written by one of the individuals identified in his response to interrogatory number five.  <u>See</u> Docket 88, Exh. 4.

On October 24, 2008, Mr. Murphy served supplemental answers to Kmart's first set of interrogatories.[4]  <u>See</u> Docket 88, Exh. 5.  Mr. Murphy identified three additional individuals with respect to interrogatory number five.  <u>Id.</u>  With respect to interrogatory number six, Mr. Murphy acknowledged that he had obtained affidavits from certain individuals during the course of his investigation,[5] but objected to the discovery of the such material on the basis of the attorney work-product doctrine.  <u>Id.</u>  Mr. Murphy also provided a privilege

_____

[4]Prior to serving his supplemental response, Mr. Murphy had been in contact with Kmart several times regarding third-party affidavits in Mr. Murphy's possession.  <u>See</u> Docket 88, Exh.6, 7, 8, & 9.

[5]Mr. Murphy states that his counsel interviewed the witnesses, drafted the affidavits, and then forwarded the affidavits to the witnesses to sign.  <u>See</u> Docket 114.

log, identifying four affidavits,[6] the dates the affidavits were executed,[7] the basis of the privilege (attorney work product), and a document description.  See Docket 88, Exh. 10.  Mr. Murphy described each affidavit as a "[s]tatement of witness, given to Plaintiff's law firm regarding facts and opinions in this case." Id.

On October 30, 2008, Kmart filed a motion to compel Mr. Murphy to produce the disputed third-party witness affidavits.  See Docket 86.  Kmart also moves the court to award its reasonable attorneys' fees and expenses incurred in making the motion and to afford Kmart the opportunity to depose the affiants who signed the affidavits.  Id.  Kmart argues that the attorney work-product doctrine does not protect from disclosure signed third-party witness statements, even if such documents were drafted by Mr. Murphy's counsel.  See Docket 87.  Kmart contends that the affidavits set forth the facts relating to the case and reflect the opinions of the affiants, not that of counsel. Id.  Kmart further asserts that any privilege, if applicable, was waived when the affidavits were shared with the third-party witnesses.  Id.  Kmart states that it has substantial need of these affidavits as Mr. Murphy has identified over 80

---

[6]Mr. Murphy received a fifth affidavit on November 24, 2008, after the privilege log had been sent to Kmart.  See Docket 114, n. 1.

[7]The first affidavit was dated September 15, 2008, the second affidavit–September 16, 2008, the third affidavit–October 6, 2008, and the fourth affidavit–October 8, 2008.  See Docket 88, Exh. 10.

individuals with knowledge of the facts and circumstances relating to this case. Id. In the alternative, Kmart argues that, even if the work-product doctrine applies to the affidavits, the facts contained in the affidavits are discoverable. Finally, Kmart argues that Mr. Murphy failed to provide an adequate privilege log that identified the affiants and described that nature of the affidavits in such a way as to allow Kmart to assess the claim of privilege.  Id.

Mr. Murphy resists Kmart's motion to compel in its entirety on the basis that the affidavits are both opinion work product and ordinary work product and should be protected from discovery.  See Docket 114.  Mr. Murphy argues that the affidavits, drafted based on conversations between his attorney and the affiants, reflect his attorney's mental impressions because the affidavits reflect those facts that the attorney deemed legally significant and those witnesses considered important to this litigation.  Id. Mr. Murphy also argues that the affidavits constitute ordinary work product because his counsel drafted them in anticipation of litigation and Kmart has failed to show a substantial need for the affidavits.  Id.  Finally, Mr. Murphy maintains that the act of providing a copy of the affidavit to the affiant does not constitute a waiver of the work-product privilege.  Id.

**DISCUSSION**

**A.    The Work Product Privilege**

Federal Rule of Civil Procedure 26(b)(1) sets forth the standard governing the scope of discovery in civil cases:

> **(b) Discovery Scope and Limits.**
>
> > (1) **Scope in General**. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

In a diversity case such as this, questions regarding the work product doctrine are resolved according to federal law.  Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000).  The federal work product doctrine, first established in Hickman v. Taylor, 329 U.S. 495 (1947), is codified in Rule 26(b)(3), as follows:

> (3) **Trial Preparation: Materials.**
>
> > (A) *Documents and Tangible Things.*  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other

8

party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

> (i) they are otherwise discoverable under Rule 26(b)(1); and

> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) *Protection Against Disclosure*.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

(C) *Previous Statement*.  Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter.  If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses.  A previous statement is either:

> (i) a written statement that the person has signed or otherwise adopted or approved; or

> (ii) a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

See Fed. R. Civ. P. 26(b)(3).

"There are two kinds of work product–ordinary work product and opinion work product."  Baker, 209 F.3d at 1054 (additional citation omitted).

Ordinary work product includes raw factual information.  Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories.  Ordinary work product is not

discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means.  In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.

Id. (internal citations omitted).

The work product privilege serves to ensure that an attorney may properly prepare his client's case with a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  Hickman, 329 U.S. at 510.  The rationale behind the adoption of the work product doctrine is provided by the Hickman Court, as follows:

Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.  That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.  This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways-aptly though roughly termed by the Circuit Court of Appeals in this case as the "Work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

10

Id. at 511; see also Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997) ("The work product privilege is designed to promote the operation of the adversary system by ensuring that a party cannot obtain material that his opponent has prepared in anticipation of litigation.").

The work product privilege is subject to several limitations.  The privilege only extends to documents prepared in anticipation of litigation which " 'set forth the attorney's theory of the case and [their] litigation strategy.' " E.E.O.C. v. Jamal & Kamal, Inc., 2006 WL 2690226 at *2 (E.D.La. Sept. 18, 2006) (slip opinion) (quoting Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 154 (1975) (additional citations omitted)); see also Gundacker v. Unisys Corp., 151 F.3d 842, 848 (8th Cir. 1998) ("The work product privilege operates to ensure that an opponent cannot secure materials than an adversary has prepared in anticipation of litigation."); In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 924 (8th Cir. 1997) ("The work product doctrine sharply limits the access of an opponent to materials 'prepared in anticipation of litigation or for trial.' ") (additional citations omitted); Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987) ("The work product doctrine will not protect these documents from discovery unless they were prepared in anticipation of litigation.").  The Eighth Circuit has held that courts should make a factual determination to decide whether documents were prepared in anticipation of litigation:

11

> [T]he test should be whether, in light of the nature of the document
> and the factual situation in the particular case, the document can
> fairly be said to have been prepared or obtained because of the
> prospect of litigation.  But the converse of this is that even though
> litigation is already in prospect, there is no work product immunity
> for documents prepared in the regular course of business rather
> than for purposes of litigation.

Simon, 816 F.2d at 401 (additional citations omitted); see also Pittman, 129

F.3d at 988 ("The doctrine allows for discovery of such documents and tangible

things only upon a showing of 'substantial need and an inability to secure the

substantial equivalent of the items through alternate means without undue

hardship' for ordinary work product (such as photographs and raw

information), and 'only in rare and extraordinary circumstances' for opinion

work product (containing mental impressions, conclusions, opinions, or legal

theories regarding the litigation).") (additional citations omitted).

Another limitation to the work product doctrine is that attorney-prepared

documents may be discoverable if they contain "relevant and nonprivileged

facts" and "production of those facts is essential to the preparation of one's

case."  Hickman, 329 U.S. 512.  Production of such documents may also be

justified where witnesses are no longer available or for purposes of

impeachment or corroboration.  Id.  Additionally, even if the document itself

falls under the protection of the work-product doctrine, the relevant,

underlying facts contained in the documents are discoverable.  See E.E.O.C. v.

Jamal & Kamal, Inc., 2006 WL 2690226 at *2 (E.D.La. Sept. 18, 2006) (slip

12

opinion) (stating that the work-product doctrine "does not extend to the underlying facts relevant to the litigation.") (citing <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395-96 (1981), for the proposition that the attorney-client privilege protects disclosure of communications but does not protect disclosure of the underlying facts contained in those communications); <u>Infosystems, Inc. v. Ceridian Corp.</u>, 197 F.R.D. 303, 306 (E.D.Mich. 2000) ("[T]he work product doctrine, like the attorney-client privilege, does not protect underlying facts from disclosure."); <u>In re Convergent Technologies Second Half 1984 Securities Litigation</u>, 122 F.R.D. 555, 558 (N.D.Cal. 1988) ("[T]he law does not permit counsel or litigants to use the work product doctrine to hide the facts themselves.  Defense counsel can learn those facts by deposing the witnesses, by acquiring unprivileged documents related to th[e] case from the witnesses, and by posing interrogatories to plaintiffs' counsel that would compel disclosure of the substance of relevant information plaintiffs' counsel has learned from non-party witnesses.").  Additionally, "[d]iscovery of work product material will be denied if the information desired can be obtained by deposition." <u>United States v. Two Bank Accounts</u>, 2007 WL 108392 at *2 (D.S.D. Jan. 5, 2007) (additional citation omitted).  "The cost or inconvenience of taking depositions is not in itself sufficient showing to meet the undue hardship requirements of [Rule 26]." <u>Id.</u>

The party asserting the work product privilege to resist disclosure bears the burden of providing a factual basis for asserting the privilege.  See St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 197 F.R.D. 620, 627 (N.D.Iowa 2000) (citing Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997) (finding the non-movant on a motion to compel met its burden to establish work product and attorney-client privilege) and In re Grand Jury, 112 F.3d at 925 ("The White House bears the burden of proving the elements of work product immunity.")).  "The party asserting the privilege 'me[ets] its burden of providing a factual basis for asserting the privileges when it produce[s] a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its…counsel.' " Id. at 628 (quoting Rabushka, 122 F.3d at 565).  If the party asserting the privilege meets this initial burden, the burden shifts to the opposing party "to prove 'substantial need' and 'undue hardship' to obtain those materials." Id. (citing Fed. R. Civ. P. 26(b)(3)).  Finally, "[t]he work product doctrine is to be applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." Pittman, 129 F.3d at 988.

## B.      The Work Product Doctrine and Third-Party Witness Affidavits

Courts have consistently held that notes and memoranda prepared by an attorney, or an attorney's agent, with respect to a witness interview "are

14

opinion work product entitled to almost absolute immunity." <u>Baker</u>, 209 F.3d at 1054 (citing <u>In re Grand Jury Proceedings</u>, 473 F.2d 840, 848 (8th Cir. 1973) (attorney's personal recollections, notes and memoranda from interviews are absolutely protected work product) and <u>Upjohn</u>, 449 U.S. at 399-400 ("[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes")). "Attorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant." <u>Id.</u> Further, "[d]iscovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party." <u>Id.</u> (citing generally <u>In re Grand Jury Proceedings</u>, 473 F.2d at 849) ("Generally, if a witness is available to the party seeking discovery of his statement to opposing counsel, such discovery should not be allowed.") (additional quotation marks and citation omitted)).

The <u>Baker</u> court addressed the issue of whether the hand-written notes taken by the defendants' attorneys and agent during a witness interview and the typed summary prepared by one of the defendant's attorneys shortly after the interview were protected by the work product doctrine, ultimately concluding that such materials were work product material. <u>See</u> <u>id.</u> However, when an attorney drafts an affidavit for a witness to adopt and sign under oath following an interview, as in the present case, courts are divided as to whether

the affidavit constitutes attorney work product subject to protection from

disclosure.

In Schipp v. General Motors Corp., 457 F.Supp.2d 917 (E.D.Ark. 2006),

the estate of Jerome Neufelder brought suit against Ann Kennedy and General

Motors (GM) after Kennedy, who was driving a GM vehicle, collided with

Neufelder's vehicle, resulting in Neufelder's death.  Schipp, 457 F.Supp.2d at

919.  GM moved to compel documents prepared by Kennedy's insurance carrier

during the investigation of the collision.  Id.  In pertinent part, GM sought

discovery of all non-party witness statements obtained by Kennedy's insurer.

Id. at 924.  The court held that any notes taken during witness interviews by

the insurance carrier and provided to Kennedy's attorney were work product

materials; however, "any verbatim non-party witness statements are neither

privileged nor work product and must be produced."  Id.; see also Dobbs v.

Lamonts Apparel, Inc., 155 F.R.D. 650, 653 (D.Alaska 1994) (holding that

verbatim, third-party witness statements made in response to attorney

questionnaire were not work product materials– "What counsel are entitled to

protect is *their* work and *their* thoughts and *their* analysis of the case, not the

knowledge possessed by third parties.") (emphasis in original).

In Tuttle v. Tyco Electronics Installation Services, Inc., 2007 WL

4561530 (S.D.Ohio Dec. 21, 2007), a case involving allegations of age

discrimination made by plaintiff against his employer, defendant requested

16

that plaintiff produce any and all affidavits or declarations and any drafts of affidavits or declarations of any witnesses. <u>Tuttle</u>, 2007 WL 4561530 at *1. Plaintiff refused to produce these documents on the basis of the work product doctrine, but also failed to produce a privilege log in a timely fashion. <u>Id.</u> Defendant then moved the court to order plaintiff to produce the requested materials and to sanction plaintiff by (1) prohibiting plaintiff from using the affidavits to oppose defendant's motion for summary judgment and (2) prohibiting the affiants from testifying at trial. <u>Id.</u>

The court held that the work product doctrine protected "information relevant to the affidavit, including but not limited to communications with the counsel relating to the affidavit, prior drafts of the affidavit, and any notes made by counsel while engaging in the process of drafting the affidavit." <u>Id.</u> at *2 (citing <u>Infosystems</u>, 197 F.R.D. at 307, n. 4 (counsel's notes of a witness interview are typically not disclosed and "are accorded full work-product protection") and <u>United States v. University Hospital</u>, 2007 WL 1665748 at *1 (S.D.Ohio June 6, 2007) (the court is "not aware of any case in which a court has permitted opposing counsel to question a witness about any role that counsel may have had in the evolution of the affidavit, about any communications with counsel relating to an affidavit, or about prior undisclosed drafts of an affidavit.")).

17

However, the court also held that plaintiff was required to produce the final versions of the affidavits in question, finding that "[a]ffidavits are not normally protected by the work product doctrine for the very reason that an affidavit 'purports to be a statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel.' " Id. (citing Infosystems, 197 F.R.D. at 306).  The court reasoned that defendants "should not be frustrated in their ability to test the perception and credibility of these affiants." Id. (additional citation omitted).  Further, the court was particularly troubled by plaintiff's failure to timely produce a privilege log. Id. at *3.  As a result, the court sanctioned plaintiff by holding that the affidavits could not be used by plaintiff to oppose defendant's summary judgment motion, although the court allowed the affiants to testify at trial. Id.

In Jamal & Kamal, Inc., the defendant requested that the E.E.O.C. produce any and all unsigned or executed affidavits and drafts thereof. Jamal & Kamal, Inc., 2006 WL 2690226 at *1.  The E.E.O.C. objected to this discovery request, citing attorney-client privilege and the work product doctrine, yet provided several *signed* affidavits. Id.  The E.E.O.C. refused, however, to disclose an *unsigned* affidavit of a witness prepared by an attorney following an interview, arguing that this document was work product material as it was prepared in anticipation of litigation, was unexecuted, and embodied the recollections and impressions of the attorney who drafted it. Id. at *1, *3.

18

Upon questioning the attorney who prepared the draft affidavit, the court determined that the affidavit did not detail the attorney's theories of the case. Id. at *3.  The attorney stated that she prepared the affidavit for the witness's signature based on her recollection of the interview and her notes.  Id.  The court ordered the E.E.O.C. to produce the document, finding persuasive the fact that the work product privilege only protects documents prepared in anticipation of litigation that " 'set forth the attorney's theory of the case and [their] litigation strategy.' "  Id. (quoting Sears, Roebuck & Co., 421 U.S. at 154).  The court concluded that "an attorney's memorialization of events, effectively acting as a stenographer, does not fall within the sphere of documentation protected by the work product privilege."  Id.

In Walker v. George Koch Sons, Inc., 2008 WL 4371372 (S.D.Miss. Sept. 18, 2008) (slip opinion), defendant moved to strike two third-party witness affidavits and to exclude the testimony of the affiants as sanctions for plaintiffs' untimely disclosure of the existence of the affidavits and the affidavits themselves.  Walker, 2008 WL 4371372 at *4.  Plaintiffs argued that, although they eventually disclosed the affidavits to the defendant after submitting them to their experts for review, their objection on the basis of the work product doctrine was proper.  Id.  Plaintiffs maintained that the affidavits were work product material because their counsel met with the affiants to discuss the subject matter of the lawsuit, drafted memoranda in affidavit form, and

19

submitted the affidavits to the affiants for their review and signature.  Id.  The
court stated that it was "not convinced" that the affidavits were the types of
materials protected by the work product doctrine.  Id.; see also Infosystems,
197 F.R.D. at 307 (questioning whether affidavits are true attorney work
product).  The court reasoned that the affidavits "merely recite relevant facts
within the affiant's personal knowledge, rather than revealing an attorney's
mental impressions or legal strategy....The fact that counsel for plaintiffs
drafted the [a]ffidavits (as is generally the case for affidavits prepared in
litigation) does not make them attorney work product immune from
disclosure."  Walker, 2008 WL 4371372 at *5 (additional citations and footnote
omitted); see also Infosystems, 197 F.R.D. at 307 ("Granted, [the plaintiff]
secured these statements [of third-party witnesses] in anticipation of litigation.
However, if it now suggests that it may interpose the work product doctrine
because it then put words in the mouths of those third-party affiants as part of
its litigation strategy, it misperceives the nature of the doctrine.") (quotation
marks and citation omitted).  The court reasoned that an affidavit " 'purports to
be a statement of facts within the personal knowledge of the witness, and not
an expression of the opinion of counsel.' "  Walker, 2008 WL 4371372 at *5
(quoting Infosystems, 197 F.R.D. at 306-07).  The court held that, regardless of
whether the affidavits were properly withheld, plaintiffs had an obligation to
note the existence of the affidavits in a privilege log and in their discovery

20

responses.  Id. at *6.  The court did not strike the affidavits because the affiants were identified as potential witnesses in plaintiffs' original responses to defendant's discovery request.  Id.  However, the court did extend the discovery deadline to allow the defendant the opportunity to depose the two affiants.  Id.

In Gilmore v. Stalder, 2008 WL 2097162 (W.D.La. May 16, 2008) (slip opinion), an action brought under 42 U.S.C. § 1983, the court granted plaintiffs' motion to strike affidavits filed in support of defendants' motion to dismiss, holding that defendants improperly failed to timely disclose the existence of the affidavits.  Gilmore, 2008 WL 2097162 at *3-*6.  The court rejected defendants' argument that the affidavits were work product material–upon reviewing the affidavits, the court found that the documents did not contain an attorney's metal impressions, legal theories, or strategies.  Id. The court determined that defendants had an affirmative duty to disclose the affidavits, reasoning that "[t]he facts underlying these affidavits are clearly discoverable and material and, thus, are not shielded from discovery by the execution of an affidavit for litigation purposes."  Id. at *5.

In contrast to this majority view, the court in Lamar v. Williams Comm'ns, LLC, 2007 WL 445511 (N.D.Okla. Feb. 6, 2007), addressed the issue of whether witness affidavits prepared by plaintiff's counsel from her notes of the interviews were work product materials.  Lamar, 2007 WL 445511 at *1. The court held that the affidavits were work product, although the court did

not provide its rationale for this decision.  Id. at *2; see also 1100 West, LLC v. Red Spot Paint & Varnish Co., Inc., 2007 WL 2904073 at *2 (S.D.Ind. May 18, 2007) ("[D]ocuments created by [counsel's agent]...during the course of this litigation that reflect which potential witnesses [the agent] has interviewed, the questions he chose to ask them, and his notes regarding their answers are classic work product; so, too, are the affidavits that [the agent] drafted summarizing his understanding of the witnesses' statements.").  The court also held that plaintiff was not required to produce even a privilege log listing the witness statements at issue, finding that "even mere disclosure of the names of non-party witnesses Plaintiff's counsel has interviewed would represent an invasion of counsel's mental impressions and strategies." Lamar, 2007 WL 445511 at *2.  The court determined that "an interrogatory asking a party to identify all persons interviewed would contravene work product.  Yet automatic disclosure of witness statements would require revelation of the identities of all witnesses from whom the attorney decided to take a statement, thereby intruding into the heart of attorney trial preparation." Id. (quotation marks and citation omitted).  However, the court ordered plaintiff to list the names of the affiants both in plaintiff's witness lists, to the extent that the affiants were potential witnesses, and in plaintiff's response to defendant's interrogatory

seeking the names of individuals likely to have discoverable information.  <u>Id.</u>
at *3. [8]

**C.    Affidavits Obtained by Mr. Murphy's Counsel**

Clearly, the five affidavits at issue in this case were prepared "in
anticipation of litigation."  The question becomes, then, whether they reveal the
attorney's thoughts, mental impressions, or trial strategies.  In light of the
majority view expressed above, the court is reluctant to extend the protections
of the work product doctrine to third-party witness affidavits that are, by their
very nature, " 'statement[s] of facts within the personal knowledge of the
witness[es].' "  <u>See</u> <u>Walker</u>, 2008 WL 4371372 at *5 (quoting <u>Infosystems</u>, 197
F.R.D. at 306-07).  The affidavits should not contain the mental impressions or
legal theories of the attorney who drafted them, and the majority view is
premised on that presumption.  Indeed, the very definition of an affidavit is a
"written or printed declaration or statement of facts, made voluntarily, and
confirmed by the oath or affirmation of the party making it, taken before a
person having authority to administer such oath or affirmation."  <u>Black's Law</u>
<u>Dictionary</u> 58 (6th ed. 1990).  In the court's experience, parties secure affidavits

---

[8]Mr. Murphy relies heavily on <u>In re Convergent</u> in support of his
argument that the affidavits are work product material.  However, <u>In re</u>
<u>Convergent</u> concerns notes taken by counsel during the interviews of two
witnesses, both of whom then reviewed and corrected the notes with only one
witness signing his statement.  <u>See</u> <u>In re Convergent</u>, 122 F.R.D. at 556.
Because this case involves third-party witness ***affidavits***, the court declines to
follow the reasoning and holding set forth in <u>In re Convergent</u>.

with an eye toward using the affidavits in support of a particular motion or in some future court proceeding, which would, of course, waive the work product privilege, if applicable.[9]

Mr. Murphy argues that the very process of selecting those individuals from whom an affidavit should be obtained reflects the mental processes and litigation strategy of his counsel.  The court is unpersuaded by this argument because Kmart would have no way of knowing how many witnesses were interviewed, how many witnesses declined to be interviewed, how many witnesses declined to provide an affidavit, or how many witnesses interviewed did not have useful information and so did not necessitate an affidavit.  The court is not persuaded that the affidavits are opinion work product material.

---

[9]The court is not persuaded by Kmart's argument that Mr. Murphy waived any work product privilege, if applicable, by showing the documents to the affiants themselves for their signatures.  "[D]isclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information."  1100 West, LLC, 2007 WL 2904073 at *2 (additional quotation marks and citation omitted).  Showing an affidavit to only the affiant would not substantially increase the opportunities for Kmart or other adversaries to gain access to the information.  Further, Rule 26(b)(3)(C) allows a person to obtain his or her own previous statements without any special showing.  See Rule 26(b)(3)(C); see also 1100 West, LLC, 2007 WL 2904073 at *2, n. 2.

Furthermore, the Federal Rules of Civil Procedure **require** parties to **voluntarily** disclose the name, address, and telephone number of each person likely to have discoverable information **that the disclosing party may use to support his case**.  See Fed. R. Civ. P. 26(a)(1)(A)(I).  The disclosing party must also state the subject of the witness' knowledge.  Id.  Therefore, a party's decision to rely on a particular witness to support his case is clearly not within the ambit of attorney work product.  Id.

The court also finds that, even if the affidavits constitute ordinary or fact work product, Kmart has made the required showing to obtain these materials. See Baker, 209 F.3d at 1054.  Kmart has indicated that Mr. Murphy "has resisted at every stage Kmart's efforts to obtain discoverable information relating to the anticipated facts in the possession of each of these witnesses from Plaintiff."  See Docket 123, p.5.  The exhibits submitted to the court in relation to this motion show that Mr. Murphy did not completely answer Kmart's interrogatory number five.  Interrogatory number five asked Mr. Murphy to state the facts and observations within the knowledge of each person identified as having information relating to the subject matter of the lawsuit.  See Docket 88, Exh. 2.  Without this information, Kmart would have to depose or take witness statements from the approximately 85 individuals identified by Mr. Murphy as having information relating to the subject matter of this lawsuit.  This is an expensive and time-consuming burden on Kmart,

25

one that is not necessary under the Federal Rules of Civil Procedure.[10]
Accordingly, the court orders Mr. Murphy to disclose to Kmart the third-party
witness affidavits in his possession within ten days of the date of this order.[11]

### D.    Kmart's Request for Sanctions

Rule 37(a)(5) of the Federal Rules of Civil Procedure states that if the
court grants a motion to compel, or if the requested discovery is provided after
a motion to compel has been filed, "the court ***must***, after giving an opportunity
to be heard, require the party or deponent whose conduct necessitated the
motion, the party or attorney advising that conduct, or both to pay the
movant's reasonable expenses incurred in making the motion, including
attorney's fees."  See Fed. R. Civ. P. 37(a)(5) (emphasis supplied).  The award of
expenses is mandatory unless the court finds that the moving party failed to
confer in good faith with the responding party prior to filing the motion, the

---

[10]The court acknowledges that, generally, the "cost or inconvenience of
taking depositions is not in itself sufficient showing to meet the undue
hardship requirements of [Rule 26]."  See Two Bank Accounts, 2007 WL
108392 at *2.  However, because Mr. Murphy did not completely answer
interrogatory number five and did not state the facts within the knowledge of
each potential witness, Kmart would have to depose or take witness statements
from over 85 individuals.  In light of this particular hardship, the court will not
extend the work product privilege to these affidavits sight unseen.  See
Pittman, 129 F.3d at 988 ("The work product doctrine is to be applied in a
commonsense manner in light of reason and experience as determined on a
case-by-case basis.").

[11]The court need not address whether Mr. Murphy's privilege log was
adequate in light of the court's ruling granting Kmart's motion.

responding party's refusal to respond was substantially justified, or other circumstances make an award of expenses unjust.  Id.

Given the split in authority with regard to the applicability of the work product doctrine to third-party witness affidavits and the lack of controlling Eighth Circuit precedent on this issue, the court finds that Mr. Murphy was substantially justified in his objections to disclosing the affidavits.  Accordingly, Kmart's request for attorney's fees and costs is denied.

Finally, Kmart requests that it be given the opportunity to depose each witness from whom an affidavit was taken.  See Docket 87.  The current discovery deadline set by the district court is February 17, 2009.  This court cannot set deadlines that run afoul of the district court's scheduling order. If Kmart needs additional time beyond February 17 to conduct depositions, it must make an appropriate motion before the district court.

## CONCLUSION

The court hereby

ORDERS that Kmart's motion to compel third-party affidavits [Docket 86] is granted in part and denied in part in accordance with the above opinion.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have ten (10) days after service of

27

this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  <u>See</u> Fed. R. Civ. P. 72(a).  Failure to file timely objections will result in the waiver of the right to appeal matters not raised in the objections.  <u>Id.</u>  Objections must be timely and specific in order to require review by the district court.

Dated January 9, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE