UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DOUG MURPHY, | ) | CIV. 07-5080-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON DEFENDANT'S MOTION |
| vs. | ) | FOR PROTECTIVE ORDER |
| | ) | [DOCKET 90] |
| KMART CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the court pursuant to defendant's motion for a
protective order and for an order quashing plaintiff's amended notice of a Rule
30(b)(6) deposition.  [Docket 90].  Defendant has represented to the court that
it has made a good-faith effort to resolve this dispute without the court's
intervention.  See Docket 91.  Defendant's motion was referred to this
magistrate judge for resolution pursuant to Chief Judge Karen E. Schreier's
order dated November 3, 2008.  [Docket 94].

**FACTS AND PROCEDURAL HISTORY**

The court incorporates by reference the facts and procedural history set
forth in the court's previous orders in this case, see Dockets 132 & 137, and,
thus, will limit its recitation to those facts pertinent to the instant motion.

On September 12, 2008, Mr. Murphy served Kmart Corporation
(hereinafter "Kmart") with notice of his intent to depose Jerry Rudrude

pursuant to Federal Rule of Civil Procedure 30(b)(6), also listing the categories of information or "subjects of examination" that would be covered at the deposition.  See Docket 92, Exh. 1.  In response, Kmart contacted Mr. Murphy's counsel to state its objections to the designation of Jerry Rudrude as a Rule 30(b)(6) witness and to the subjects of examination listed in the deposition notice, arguing that the topics were overly broad, lacked the requisite specificity, and covered information not relevant to Mr. Murphy's claims.  See Docket 92, Affidavit of Fitzke.  Mr. Murphy's counsel agreed to consider Kmart's objections.  See id.

On September 23, 2008, Mr. Murphy filed a Rule 30(b)(6) deposition notice that did not designate any specific individual as the appropriate deponent.  See Docket 47.  In this filed notice, Mr. Murphy included additional subjects of examination and left the previously-listed categories unaltered.  Id. Kmart again objected, on the same grounds cited above, to each subject of examination.  See Docket 92, Exh. 2.

After several communications between the parties, Mr. Murphy's counsel agreed to consider Kmart's objections and to file an amended notice.  See Docket 92, Affidavit of Fiske.  On October 15, 2008, Mr. Murphy filed an amended notice of Rule 30(b)(6) deposition, modifying many subjects of examination primarily by limiting the time period and/or geographic area that would be covered.  See Docket 66.  Kmart contacted Mr. Murphy's counsel to

2

discuss Kmart's continuing objections to the amended notice, but did not resolve the issue to its satisfaction.  <u>See</u> Docket 92, Affidavit of Fiske; <u>see also</u> Docket 117, Affidavit of Lee.  Kmart also declined to identify the corporate designee(s) that would serve as the Rule 30(b)(6) deponent(s).  <u>See</u> Docket 117, Affidavit of Lee.

On October 31, 2008, Kmart filed a motion for a protective order prohibiting Mr. Murphy from deposing Kmart's corporate designee(s) regarding the subjects of examination listed in the amended notice.  <u>See</u> Dockets 90 & 91.  Kmart moves the court to quash the amended notice in its entirety.  <u>Id.</u> Kmart also moves the court to award its reasonable attorney's fees and costs incurred in filing the instant motion.  <u>Id.</u>  In general, Kmart argues that the subjects of examination are too vague to properly prepare the deponent and that the subjects cover information that exceeds the scope of allowable discovery–information that is irrelevant to Mr. Murphy's claims, unduly burdensome, and duplicative of materials already disclosed.  Kmart's arguments in support of its motion are set out in greater detail below as are Mr. Murphy's arguments in opposition to the motion.

## DISCUSSION

### A.    Scope of Discovery Under Rule 26

Federal Rule of Civil Procedure 26(b)(1) sets forth the standard governing the scope of discovery in civil cases:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. . . .  In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case.  Id.; see also Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 635 (D.Minn. 2000) ("[T]he threshold requirement of discoverability is whether the information sought is 'relevant to the subject matter involved in the pending action.' ") (quoting Shelton v. American Motors Corp., 805 F.2d 1323, 1326 (8th Cir. 1986)). "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D.Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the

5

case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)). Limiting discovery to relevant information is a necessary restriction on otherwise liberal discovery rules:

> While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

Hofer, 981 F.2d at 380 (internal citations omitted).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1) advisory committee's note. Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit..." See Fed. R. Civ. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit

6

discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D.Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").  "Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery."  Hohn v. BSNF Ry. Co., 2007 WL 2572440 at *3 (D.Neb. May 10, 2007).  "The party opposing discovery has the burden to show that its objections are valid by providing explanation or factual support.  Id.; see also Rubin v. Islamic Republic of Iran, 349 F.Supp.2d 1108, 1111 (N.D.Ill. 2004) ("[T]he burden is upon the objecting party to show why a discovery request is improper.").  Here, the initial burden is on Mr. Murphy to show how the information sought through the Rule 30(b)(6) deposition is relevant to the subject matter of his case.  The burden then shifts to Kmart to show that the information sought through the Rule 30(b)(6) deposition is not discoverable.

**B.     Standard Governing Requests for Protective Orders**

Federal Rule of Civil Procedure 26(c) governs the granting of a protective order by the court, as follows:

**(c) Protective Orders.**

**(1) In General.**  A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending–or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (A) forbidding the disclosure or discovery;

> (B) specifying terms, including time and place, for the disclosure or discovery;

> (C) prescribing a discovery method other than the one selected by the party seeking discovery;

> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

> (E) designating the persons who may be present while the discovery is conducted;

> (F) requiring that a deposition be sealed and opened only on court order;

> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

**(2) Ordering Discovery.**  If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

> **(3) Awarding Expenses.** Rule 37(a)(5) applies to the award
> of expenses.

<u>See</u> Fed. R. Civ. P. 26(c).

The trial court has significant discretion in either granting or denying a protective order, and "only an abuse of that discretion would be cause for reversal." <u>General Dynamics Corp. v. Selb Mfg. Co.</u>, 481 F.2d 1204, 1212 (8th Cir. 1973). Under Rule 26(c), a court may grant a protective order only upon a showing of good cause by the moving party. <u>Id.</u> The movant must articulate "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." <u>Id.</u> (additional citation and quotation marks omitted); <u>see also</u> <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.") (additional citations and quotation marks omitted). The court must also consider "the relative hardship to the non-moving party should the protective order be granted." <u>General Dynamics Corp.</u>, 481 F.2d at 1212 (additional citation omitted).

In <u>Pansy</u>, The Third Circuit set forth a thoughtful analysis of the good-cause standard that this court finds instructive. Although <u>Pansy</u> dealt specifically with the issue of whether the trial court abused its discretion in

9

first granting and then subsequently refusing to modify a confidentiality order over a settlement agreement, confidentiality orders over matters concerning stages of litigation and protective orders over discovery are "functionally similar, and require similar balancing between public and private concerns." Pansy, 23 F.3d at 786.

> In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process.... [T]he court...must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled.  When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.
>
> Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in a designated way," as authorized by the last clause of Rule 26(c)(7).... Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public.  Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

Id. at 787 (additional citations omitted).

The balancing test requires courts to consider a variety of factors to determine if a protective order is appropriate.  Id. at 789.  These factors, discussed below, "are unavoidably vague and are of course not exhaustive" so as to provide courts with "the flexibility needed to justly and properly" resolve discovery disputes.  Id.

One interest which should be recognized in the balancing process is an interest in privacy.  It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection.  In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose.  However, privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny.

While preventing embarrassment may be a factor satisfying the "good cause" standard, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.  As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground.

Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety and when the sharing of information among litigants would promote fairness and efficiency.

A factor which a court should consider in conducting the good cause balancing test is whether a party benefitting from the order of confidentiality is a public entity or official.  Similarly, the district court should consider whether the case involves issues important to the public.... [I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.

Id. at 787-88 (internal quotation marks, footnotes, and citations omitted).

When dealing with sensitive or proprietary information, courts routinely grant protective orders that limit who may access the disclosed information and how the disclosed information may be used.  Id. at 787 (additional citation omitted).  Rule 26(c) confers " 'broad discretion on the [district] court to decide

11

when a protective order is appropriate and what degree of protection is required.' " <u>Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2</u>, 197 F.3d 922, 925 (8th Cir. 1999) (quoting <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36 (1984)).  In this case, Kmart, as the party seeking the protective order, has the burden "to show the necessity of its issuance."  See <u>General Dynamics Corp.</u>, 481 F.2d at 1212.

## C.    Federal Rule of Civil Procedure 30(b)(6)

Federal Rule of Civil Procedure 30(b)(6) governs depositions of organizational entities and provides as follows:

> **(6) Notice or Subpoena Directed to an Organization.**  In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.  A subpoena must advise a nonparty organization of its duty to make this designation.  The persons designated must testify about information known or reasonably available to the organization.  This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

<u>See</u> Fed. R. Civ. P. 30(b)(6).

In 1970, Congress substantively amended Rule 30(b)(6) to place the burden on the organizational entity to designate the appropriate representative(s) to testify on its behalf.  <u>See</u> Fed. R. Civ. P. 30(b)(6) advisory committee's note.  This amendment serves three useful purposes.  <u>See id.</u>

12

First, it reduces the difficulties experienced by the party requesting the deposition in determining whether a particular organizational employee was a "managing agent." Id.  Second, it curbs the "bandying" by which various organizational officers or agents, while being deposed, disclaim knowledge of facts clearly known by some other officer or agent of the organization.  Id.; see also Prokosch, 193 F.R.D. at 638 ("Since a corporation can only act through its employees, directors and agents, the potential thrives for an inquiring party to be bandied, from one corporate representative to another, vainly searching for a deponent who is able to provide a response which would be binding upon that corporation.").  Finally, it protects the organization by eliminating unnecessary and unproductive depositions of employees who have no knowledge of the topics at issue.  See Fed. R. Civ. P. 30(b)(6) advisory committee's note; see also Prokosch, 193 F.R.D. at 638 ("On the other hand, a corporation should not be confronted with a seemingly endless sequence of depositions which necessarily interfere with the capacity of its officers and employees to properly discharge their employment duties, and which impose substantial financial costs.") (additional citations omitted); Protective Nat. Ins. Co. of America v. Commonwealth Ins. Co., 137 F.R.D. 267, 278 (D.Neb. 1989) (explaining the rationale behind the 1970 amendment) (citing Cates v. LTV Aerospace Corp., 480 F.2d 620, 623 (5th Cir. 1973)).

13

"[T]he effectiveness of the Rule bears heavily upon the parties' reciprocal obligations." Prokosch, 193 F.R.D. at 638.  The party requesting the deposition must "reasonably particularize the subjects of the intended inquiry so as to facilitate the responding party's selection of the most suitable deponent." Id.; see also Dwelly v. Yamaha Motor Corp., 214 F.R.D. 537, 540 ("[T]he Rule only operates effectively when the requesting party specifically designates the topics for deposition, and when the producing party produces such number of persons as will satisfy the request.") (additional quotation marks and citations omitted).  Armed with this notice, the responding party "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters." Prokosch, 193 F.R.D. at 638 (additional quotation marks and citations omitted); see also Alliance for Global Justice v. District of Columbia, 437 F.Supp.2d 32, 37 (D.D.C. 2006) ("By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity.") (citation omitted).  "If no current employee has sufficient knowledge to provide the requested information, the party is obligated prepare [one or more witnesses] so that they may give

14

complete, knowledgeable and binding answers on behalf of the corporation."

Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D.Neb. 1995).

**D.     Mr. Murphy's Amended Notice of Rule 30(b)(6) Deposition**

**1.     First Subject of Examination**

The first subject of examination identified in Mr. Murphy's amended Rule
30(b)(6) deposition notice is "[t]he corporate history of Kmart Corporation,
Kmart Holding Corporation, Sears Corporation, and Sears Holdings
Corporation for the last ten (10) years, i.e., relationship of Kmart Corporation,
Kmart Holding Corporation, Sears Corporation, and Sears Holdings
Corporation and the bankruptcy in 2001."  [Docket 66].  Kmart objects to this
line of inquiry on a variety of grounds.  See Docket 91.

First, Kmart objects to any inquiry into the corporate history of any
entity other than Kmart Corporation, the named defendant.  Id.  Kmart also
argues that, even if the inquiry is limited to Kmart Corporation, it is "overbroad
and burdensome in that it seeks tremendous amounts of corporate information
wholly unrelated to any aspect of plaintiff's claims in this case, and which is
not reasonably contemplated to lead to the discovery of relevant evidence."  Id.
Kmart also argues that the information sought by Mr. Murphy is available
through less burdensome means, i.e., company internet sites.  Id.  Finally,
Kmart argues that Mr. Murphy failed to describe this inquiry with "painstaking

specificity" so as to allow Kmart to properly designate and prepare a corporate witness.  Id.

Mr. Murphy maintains that he is entitled to information from corporate entities other than Kmart and that such information is relevant "to know the past history of these various entities, that apparently merged to form a single relationship, and Kmart's relationship and role in this corporate hierarchy." See Docket 116.  Mr. Murphy maintains that the request is not burdensome as a corporate designee should have a "working understanding" of this subject. Id.  He argues that Kmart is required to provide a corporate designee despite the fact that the information may be available through other means.  Id. Mr. Murphy also argues that he described this line of inquiry with "reasonable particularity" in accordance with Rule 30(b)(6) and is not required to meet the heightened standard of "painstaking particularity" demanded by Kmart.  Id. Rather, Kmart should interpret Mr. Murphy's subject of examination in light of and consistent with the underlying claims of this lawsuit.  Id.

The court agrees with Mr. Murphy that he should not be held to a more rigorous standard than that contemplated by Rule 30(b)(6).  The plain language of the Rule clearly states that the party requesting the deposition must describe with "reasonable specificity" the topics to be discussed.  See Rule 30(b)(6).  In support of its position on this issue, Kmart cites to Union Pacific R.R. Co. v. Mike's Train House, Inc., 2006 U.S. Dist. Lexis 56349 at *18

(D.Neb. Aug. 10, 2006),[1] which cites, in relevant part, to <u>Prokosch</u>, 193 F.R.D. at 638.  Particularly, Kmart references the following passage quoted in <u>Union Pacific R.R. Co.</u> but originating in <u>Prokosch</u>: "[T]o allow the Rule to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."  <u>See</u> <u>Prokosch</u>, 193 F.R.D. at 638.  However, the <u>Prokosch</u> court also stated, in an earlier passage, that "the requesting party must reasonably particularize the subjects of the intended inquiry so as to facilitate the responding party's selection of the most suitable deponent."  <u>Id.</u>  The Prokosch court went on to state, in a later passage, that the corporation must designate an appropriate representative to satisfy the request once it is notified as to the "reasonably particularized areas of inquiry." <u>Id.</u>  In reading these passages in tandem, there is no evidence that the court intended to supplant the "reasonable particularity" standard clearly articulated in Rule 30(b)(6).  Without some clear direction from the Eighth Circuit on this issue, this court will not hold Mr. Murphy to a heightened standard not contemplated by Rule 30(b)(6).

That being said, the court does not believe that Mr. Murphy has satisfied the "reasonable specificity" standard of Rule 30(b)(6).  Mr. Murphy seeks information regarding (1) the corporate history of four corporate entities, (2) the

---

[1]This case is not available in the Westlaw research database.

corporate relationship between these entities, and (3) the bankruptcy of 2001. The court agrees with Kmart that this request covers a tremendous amount of information that may be completely irrelevant to Mr. Murphy's claims. Mr. Murphy argues that Kmart should interpret this request in accordance and consistent with his underlying claims. However, the burden is on *Mr. Murphy*, as the party requesting the deposition, to satisfy the "reasonable particularity" standard of Rule 30(b)(6). See Rule 30(b)(6). Without further clarification, Kmart could not reasonably designate and properly prepare a corporate representative to testify on its behalf with respect to this broad line of inquiry. Considering that Kmart could face sanctions for failing to adequately produce and prepare its deponents, it hardly seems fair to expect Kmart to "interpret" this line of inquiry to the extent that Mr. Murphy demands. See Fed. R. Civ. P. 37 (authorizing the use of sanctions for a party's failure to make disclosures or cooperate in discovery). Further, sufficient discovery has been produced in this case to allow Mr. Murphy to narrow the focus of this inquiry to *relevant* subjects. Thus, the court will require Mr. Murphy to file a second amended Rule 30(b)(6) notice that reasonably narrows or clarifies this line of inquiry.

The court disagrees with Kmart's assertion that this line of inquiry is unduly burdensome because the information is available elsewhere. A Rule 30(b)(6) deposition serves a unique function–it is the "sworn corporate admission that is binding on the corporation." See In re Vitamins Antitrust

Litigation, 216 F.R.D. 168, 174 (D.D.C. 2003); see also Sprint Communications

Co., L.P. v. Theglobe.com, Inc., 236 F.R.D. 524, 527 (D.Kan. 2006) ("In a Rule

30(b)(6) deposition, there is no distinction between the corporate representative

and the corporation.  The Rule 30(b)(6) designee does not give his personal

opinion.  Rather, he presents the corporation's position on the topic.  The

designee testifies on behalf of the corporation and thus holds it accountable.")

(internal quotation marks and citations omitted).  "The corporation as a

fictional entity can never know that a fact is true except to the extent its

employee or agent does.  Therefore, knowledge of [corporate] employees is

'imputed to the corporation itself.' "  In Re Vitamins Antitrust Litigation, 216

F.R.D. at 173 (quoting General Dynamics Corp., 481 F.2d at 1210, with

additional citations omitted).

Discovery by means of a Rule 30(b)(6) deposition differs from discovery

obtained through other means, e.g. interrogatories and requests for production.

See id. at 174 (noting the differences between discovery obtained by document

submissions and discovery obtained by a Rule 30(b)(6) deposition).  A Rule

30(b)(6) deposition allows the requesting party to obtain " 'more complete

information and is, therefore favored.' "  Great American Ins. Co. of New York v.

Vegas Const. Co., Inc., 251 F.R.D. 534, 539 (D.Nev. 2008) (quoting Marker v.

Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989).  "[I]n

responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take

the position that its documents state the company's position."  Id. (additional citation omitted); see also Marker, 125 F.R.D. at 126 (rejecting defendant's argument that the information sought by a Rule 30(b)(6) deposition had already been produced in its written answers to interrogatories).  "Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent."  Great American Ins. Co. of New York, 251 F.R.D. at 541; see also National Life Ins. Co. v. Hartford Accident and Indemnity Co., 615 F.2d 595, 600 n. 5 (3d 1980) ("[T]here are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses.").

Kmart has objected to almost every subject of examination identified in Mr. Murphy's amended Rule 30(b)(6) notice on the ground that such information is duplicative and unduly burdensome as it has already been produced in other forms or is available elsewhere.  If the court were to adopt Kmart's position, then few Rule 30(b)(6) depositions would ever take place.  The court recognizes that the burden on Kmart to prepare a knowledgeable Rule 30(b)(6) deponent "may be onerous," but the court "is not aware of any less onerous means of assuring that the position of a corporation...can be fully and fairly explored."  See Prokosch, 193 F.R.D. at 639.  Simply put, "[i]t is not up to [Kmart] to determine what discovery [Mr. Murphy] needs."  See In re Vitamins Antitrust Litigation, 216 F.R.D. at 174.

20

Kmart's argument that Mr. Murphy is not entitled to information from any other corporate entity is a more difficult issue to address as there is little case law on this subject.  The Illinois court in <u>S.C. Johnson & Son, Inc. v. Dial Corp.</u>, 2008 WL 4223659 (N.D.Ill. Sept. 10, 2008) (slip copy), dealt with a similar issue to the one raised herein.  Plaintiffs S.C. Johnson & Son and Consultaria Tecnica E Representacoes, LDA ("CTA") filed suit against defendant, Dial Corporation, alleging that certain air-freshening products sold by Dial infringed on a patent owned by CTR and licensed to S.C. Johnson & Son.  See <u>S.C. Johnson & Son, Inc.</u>, 2007 WL 4223659 at *1.  Plaintiffs subpoenaed a third party, Sara Lee Corporation, to produce a witness to testify at a Rule 30(b)(6) deposition.  <u>Id.</u>  Sara Lee owned a subsidiary, Sara Lee Health and Body Care Espana, SL, which had a contract with Dial for the products at issue.  <u>Id.</u>  Plaintiffs sought to investigate this contractual relationship through a Rule 30(b)(6) deposition.  <u>Id.</u>  Sara Lee moved to quash the subpoena on the ground that this subsidiary was a separate legal entity over which Sara Lee did not exercise direct, day-to-day control and, thus, Sara Lee should not be required to designate a deponent to provide testimony on topics completely outside the scope of its knowledge.  <u>Id.</u>  Sara Lee admitted that it had enough control over its subsidiary that it could produce one or more witnesses if necessary.  <u>Id.</u>

21

The <u>S.C. Johnson & Son, Inc.</u> court stated that it had identified only two

cases that dealt with this issue.  The first, <u>Twentieth Century Fox Film Corp. v.</u>

<u>Marvel Enterprises, Inc.</u>, 2002 WL 1835439 (S.D.N.Y. Aug. 8, 2002),[2] "held that

an entity subpoenaed pursuant to Rule 30(b)(6) must produce a witness

---

[2]In <u>Twentieth Century Fox</u>, plaintiff was the licensee of copyrighted
characters, known as "X-MEN," created by defendant Marvel Enterprises, Inc.
<u>See</u> <u>Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.</u>, 2002 WL
1835439 at *1 (S.D.N.Y. Aug. 8, 2002).  Plaintiff alleges that co-defendant
Tribune Entertainment Co. created a television program, "MUTANT-X," that
infringed on plaintiff's rights to the X-MEN characters.  <u>Id.</u>  Plaintiff served a
*subpoena duces tecum* on Tribune Broadcasting, the parent of Tribune
Entertainment, and, in response, Tribune Broadcasting produced a document
on "WGN" letterhead that appeared to be a script for a sales presentation that
suggested a close association between the X-MEN motion picture and the
MUTANT-X television program.  <u>Id.</u>  WGN-TV and WGN Superstation are
television stations owned and operated by Tribune Broadcasting.  <u>Id.</u>

Plaintiff then served a Rule 30(b)(6) deposition notice on Tribune
Broadcasting.  <u>Id.</u>  During the deposition, the deponent denied knowledge of
the document.  <u>Id.</u>  Plaintiff served a Rule 30(b)(6) subpoena on WGN-TV, and
the deponent produced on behalf of WGN-TV also denied knowledge of the
document.  <u>Id.</u> at *1-*2.  Plaintiff sought to depose WGN Superstation, but
could not do so without further order from the court as plaintiff had reached its
limit for depositions.  <u>Id.</u> at *2.  Thus, the court faced the issue of whether "an
entity receiving a notice of deposition pursuant to Rule 30(b)(6) is obligated to
produce a witness prepared with the knowledge of both the entity that received
the subpoena and its subsidiaries or affiliates."  <u>Id.</u>

The court determined that "the scope of the entity's obligation in
responding to a 30(b)(6) notice is identical to its scope in responding to
interrogatories served pursuant to Rule 33 or a document request served
pursuant to Rule 34, namely, it must produce a witness prepared to testify
with the knowledge of the subsidiaries and affiliates if the subsidiaries and
affiliates are within its control."  <u>Id.</u>  The court concluded that, because
Tribune Broadcasting owned and operated WGN Superstation, it had sufficient
control to be charged with WGN Superstation's knowledge for purposes of
discovery.  <u>Id.</u> at *5.

22

prepared to testify with the knowledge of its subsidiaries if the subsidiaries are 'within its control.' " Id. (citing Twentieth Century Fox Film Corp., 2002 WL 1835439 at *2).  In contrast, the second case, In re Ski Train Fire of November 11, 2000, Kaprun, Austria, 2006 WL 1328259 (S.D.N.Y. May 16, 2006),[3] "held that a corporate parent was not required to 'acquire all of the knowledge of the subsidiary on matters in which the parent was not involved, and to testify to those matters in a manner which binds the parent, a separate legal entity,' because the subsidiary's knowledge was not 'reasonably available' for purposes of Rule 30(b)(6)."  Id. (citing In re Ski Train Fire of November 11, 2000, Kaprun, Austria, 2006 WL 1328259 at *9).  Sara Lee argued that this case was more factually similar to In re Ski Train Fire because the deposition testimony sought was expansive, whereas the deposition testimony sought in Twentieth Century Fox related to one document only.  Id.

In light of this split of authority, the court turned for guidance to the 1970 advisory committee notes for Rule 30(b)(6).  S.C. Johnson & Son, Inc.,

---

[3]The court in In re Ski Train Fire declined to follow the holding in Twentieth Century Fox because of distinguishable facts.  See In re Train Fire of November 11, 2000, Kaprun, Austria, 2006 WL 1328259 at *9 (S.D.N.Y. May 16, 2006).  Plaintiff served a Rule 30(b)(6) subpoena on the parent corporation to produce witnesses knowledgeable on topics relating to the renovation of the Kaprun train, defects in its electrical systems, and the relationship of the alleged defects to the fire on the train.  Id.  The court determined that employees from the subsidiary corporation were most knowledgeable on these subjects and that such information was not reasonably available to the corporate parent.  Id.

2008 WL 4223659 at *2.  The court noted that shifting the burden to the corporation to designate an appropriate representative ameliorated the difficulties experienced by the party requesting the deposition to determine which corporate employee is a managing agent.  <u>Id.</u>  The court noted that the advisory committee "wrote that this burden is 'not essentially different than the burden of answering interrogatories...and is in any case lighter than that of an examining party ignorant of who in the corporation has knowledge.' "  <u>Id.</u> (quoting Fed. R. Civ. P. 30(b)(6) advisory committee's note).  "This comment evinces an intent to shift certain burdens to the entity that is in a better position to obtain useful information."  <u>Id.</u>

The court also noted that Sara Lee need not designate one of its own employees to provide testimony regarding its subsidiary, but rather could designate any person or persons most familiar with the designated topics.  <u>Id.</u> Thus, Sara Lee would not be forced to acquire all of the knowledge of its subsidiaries.  <u>Id.</u>  Further, because the Rule 30(b)(6) subpoena focused on one specific patent for Dial's air-freshening product and the negotiations and contracts related to that product, Sara Lee only had to provide witnesses with knowledge of a limited number of subsidiaries.  <u>Id.</u>  Accordingly, the court denied Sara Lee's motion to quash the Rule 30(b)(6) subpoena.  <u>Id.</u>

This case is different from <u>S.C. Johnson & Son, Inc.</u>, <u>Twentieth Century Fox</u>, and <u>In Re Ski Train Fire</u> in that Mr. Murphy's amended Rule 30(b)(6)

notice places the burden on Kmart to designate witnesses to speak about its

parent corporation, Sears Holdings Corporation, and sister corporation, Sears,

Roebuck and Company, both non-parties to this suit.[4]  The court believes that

inquiries concerning these other corporate entities could lead to the discovery

of relevant information.  The alleged discriminatory conduct against

Mr. Murphy took place within approximately six months of the merger of Kmart

and Sears, Roebuck and Co. into Sears Holdings Corporation.

Mr. Murphy may seek to explore whether financial considerations associated

with the merger prompted corporate management of these inter-related entities

to streamline their employee costs.  Further, although it is often the case that

discovery disputes center around the parent corporation acquiring information

---

[4]Neither Kmart nor Mr. Murphy clearly defines the relationship between Kmart Corporation, Kmart Holdings Corporation, Sears Corporation, and Sears Holdings Corporation.  The court's independent research reveals that on January 22, 2002, Kmart Corporation filed for Chapter 11 bankruptcy, officially emerging from bankruptcy as Kmart Holdings Corporation and, on June 10, 2003, started to trade on the NASDAQ National Marks as "KMRT." See http://en.wikipedia.org/wiki/Kmart.  On November 17, 2004, Kmart announced its intention to purchase Sears, Roebuck and Company, and, as part of the merger, Kmart Holdings Corporation changed its name to Sears Holdings Corporation.  Id.  "The merger of Kmart and Sears as Sears Holdings Corporation closed on March 24, 2005, following affirmative shareholder votes of both companies."  See http://www.searsholdings.com/about/.  Sears Holdings Corporation is the publicly-traded parent of Kmart and Sears, Roebuck and Company.  Id.  In essence, the merger of Kmart and Sears, Roebuck and Company created Sears Holdings Corporation.  See http://en.wikipedia.org/wiki/Kmart.  Thus, both Kmart and Sears, Roebuck and Company are wholly-owned subsidiaries of Sears Holdings Corporation. See http://www.searsholdings.com/about/sears/; http://www.searsholdings.com/about/kmart/.

in the custody of its subsidiaries, this does not preclude a subsidiary from gaining control over information in the possession of its parent corporation.

In <u>Hunter Douglas, Inc. v. Comfortex Corp.</u>, 1999 WL 14007 (S.D.N.Y. Jan. 11, 1999), involving a dispute over the production of documents in response to certain discovery requests, the court held that "[i]f the nature of the relationship between the parent and its affiliate is such that the affiliate can obtain documents from its foreign parent to assist itself in litigation, it must produce them for discovery purposes." See <u>Hunter Douglas, Inc.</u>, 1999 WL 14007 at *3.  "[T]he test focuses on whether the corporation has 'access to the documents' and 'ability to obtain the documents.' " <u>Id.</u> (citation omitted); <u>see also</u> <u>Japan Halon Co., Ltd. v. Great Lakes Chemical Corp.</u>, 155 F.R.D. 626, 628 (N.D. Ind. 1993) (holding that the relationship between the plaintiff and its two Japanese parent corporations was sufficiently close to justify enforcing the defendant's discovery request for documents in the physical possession of the parent corporations).

Kmart argues that Mr. Murphy is not entitled to inquire into these other entities because they are not parties to the suit.  However, the issue is whether Kmart has sufficient control over or access to Sears, Roebuck and Company and Sears Holdings Corporation to be charged with the knowledge of these entities.  Kmart has provided no information to assist the court in resolving this issue.  Given the court's independent research, the court suspects that

26

Kmart does have the requisite access.  Kmart <u>purchased</u> Sears, Roebuck and Company in 2004.  <u>See</u> note 3, *supra*.  This merger <u>created</u> Sears Holdings Corporation, that is, Sears Holdings Corporation did not exist prior to this merger.  <u>Id.</u>  Sears Holdings Corporation owns and operates <u>only</u> those two entities.  <u>Id.</u> Sears Holdings Corporation markets products under brands held by <u>both</u> companies.  <u>See</u> <u>http://www.searsholdings.com/indez.htm.</u>  Further, the board of directors for Sears Holdings Corporation is the same as that for Kmart and Sears, Roebuck and Company.  <u>Id.</u>  Finally, Kmart need not designate one of its own employees to provide testimony regarding these other entities, but rather could designate any person or persons most familiar with the designated topics. Thus, the court will allow Mr. Murphy to inquire into the *relevant* history of the four corporate entities identified in this subject of examination, as more narrowly tailored by the amended request the court has directed Mr. Murphy to serve.

### 2.      Second Subject of Examination

The second subject of examination identified in Mr. Murphy's amended Rule 30(b)(6) deposition notice is "[b]usiness plans that Defendant (all corporations listed in 1., above), developed from 2001 to 2005, regarding retention or termination of salaried employees." [Docket 66].  Kmart objects to this line of inquiry on several grounds.  <u>See</u> Docket 91.  Kmart argues that "no entity other than Kmart Corporation, which is the sole defendant in this

27

matter, is properly subject to discovery in this case." Id. Kmart also argues that this inquiry is "temporally, substantively and geographically overbroad." Id. Kmart maintains that discovery should be limited to retention or termination plans established for District 917[5] because Mr. Murphy's allegations exclusively center around the conduct of Jerry Rudrude, the district manager for District 917. Id. Kmart maintains that this inquiry should be limited temporally from 2003 to 2005 because Jerry Rudrude did not begin supervising Mr. Murphy until June of 2004. Id. Kmart also argues that discovery should be limited to retention or termination plans for the store manager position because this was the sole position held by Mr. Murphy for the last ten years of his employment. Id. Finally, Kmart argues that this inquiry is unreasonably duplicative because Kmart has already produced applicable policies in response to Mr. Murphy's discovery requests. Id.

---

[5]Kmart actually referenced District 914. There is some confusion about whether Mr. Murphy worked within Kmart's District 917 or District 914. Mr. Murphy refers to District 917 in other pleadings, see e.g., Docket 59, but refers to District 914 in his response to Kmart's motion for a protective order, see Docket 116. Kmart has consistently referred to District 914 in its pleadings, see e.g., Dockets 76, 91, & 124. The court cannot account for this discrepancy; however, there is some evidence that Kmart changed the stores that comprised the district several times, see Dockets 76 & 96. Perhaps the Rapid City store at which Mr. Murphy was employed was once part of District 917 and then became part of District 914, or vice versa. In its previous order, the court noted this discrepancy and, solely for the sake of consistency, referred to District 917 throughout its opinion. See Docket 132. Again, for the sake of consistency with this previous order, the court will refer to District 917 as the district in which Mr. Murphy worked.

28

In support of this line of inquiry, Mr. Murphy makes the same arguments that he did in support of his first subject of examination with the addition of the following arguments.  <u>See</u> Docket 116.  Mr. Murphy argues that he is entitled to discovery covering a reasonable time period before and after the tenure of his employment with Kmart and to discovery for all of Kmart's districts, particularly the districts comprising the Western Region.  <u>Id.</u>

The court does not find that the inquiry is temporally overbroad. Mr. Murphy is entitled to discovery for a reasonable period of time before and after Kmart's alleged discriminatory conduct.  <u>See</u> <u>Sallis v. University of Minn.</u>, 408 F.3d 470, 478 (8th Cir. 2005) (In the Title VII context, "[c]ourts have frequently tailored discovery requests, as to historic company records, to encompass a reasonable time period, both before and after the discriminatory event bring alleged.") (additional quotation marks and citation omitted); <u>Jones v. Forrest City Grocery Inc.</u>, 2007 WL 841676 at *1 (E.D.Ark. March 16, 2007) (finding that in Title VII cases, "the scope of discovery is extended to a reasonable number of years before the alleged Title VII violation" and citing, in footnote, cases in support); <u>E.E.O.C. v. Woodmen of the World Life Ins. Society</u>, 2007 WL 1217919 at *3 (D.Neb. March 15, 2007) (In cases involving claims of sexual harassment and discrimination, "discovery is typically limited to... 'a reasonable time before and after the discrimination complained of.' ") (quoting <u>Mitchell v. Nat'l R.R. Passenger Corp.</u>, 217 F.R.D. 53, 57 (D.D.C. 2003)); <u>Miles</u>

v. Boeing Co., 154 F.R.D. 117, 119 (E.D.Pa. 1994) (In Title VII cases, "the scope of discovery is commonly extended to a reasonable number of years prior to the defendants' alleged illegal action and also for periods after the alleged discrimination.") (additional citations omitted).  Mr. Murphy requests information covering a five-year period, from 2001 to 2006.  The court finds this period to be reasonable in light of the particular facts of this case.  Cf. Jones, 2007 WL 841676 at *1 (finding that, for discovery in Title VII cases, "[t]he majority of courts had held that going back five years before the first violation occurred is reasonable").  Rick Carr allegedly made ageist comments at a meeting in San Diego, California, in April of 2004.  See Docket 132, p. 19. Jerry Rudrude became district manager over Mr. Murphy's store in June 2004. See Docket 91.  Mr. Murphy states that his complaints began in August of 2005, see Docket 92, Exh. 6, deposition of Murphy, p. 42, lines 15-17. Mr. Murphy's employment with Kmart terminated in October or November 2005.  See Docket 92, Exh. 5.  The court is not convinced that the specified five-year time period would unduly burden Kmart to the extent that it could not adequately prepare a corporate representative to testify on its behalf.  See Hohn, 2007 WL 2572440 at *5 (finding that defendant failed to show that the time frame identified in the Rule 30(b)(6) notice created an undue burden).

The court agrees with Kmart that Mr. Murphy is not entitled to nationwide discovery as explained in greater detail in the court's previous

30

order.  See Docket 132.  Mr. Murphy has not provided the court with any new information that would justify broadening the scope of discovery to company-wide records.  The appropriate geographic scope of this inquiry is Kmart's Western Region, and Mr. Murphy shall amend his Rule 30(b)(6) notice accordingly.  See id.

For the same reasons set forth previously in this opinion, the court rejects Kmart's argument that this line of inquiry should be quashed because it is unreasonably duplicative.

The court agrees with Kmart that this inquiry should be limited to the position of Kmart store managers.  "It is well established that only similarly situated employees are relevant to a claim of disparate treatment."  See Franklin v. Living Centers-East, Inc., 1999 WL 615171 at *2 (E.D.La. Aug. 12, 1999) (citing Krystek v. University of Miss., 164 F.3d 251, 257-58 (5th Cir. 1999)) (additional citations omitted).  For the last ten years of his employment, Mr. Murphy had been a Kmart store manager.  Mr. Murphy has consistently alleged that Kmart had a plan to eliminate older *store managers* and replace them with younger *store managers.*  See Docket 116.  Mr. Murphy has presented no evidence that any other class of employees allegedly were discriminated against so as to justify discovery into other job categories.  See e.g., Docket 117, Exh. 6 (discussing demotion of other *store managers*).  Thus, the court orders Mr. Murphy to limit this subject of examination to the position

of Kmart store manager.  Compare Franklin, 1999 WL 615171 at *2 (in Title VII

action, court limited discovery to employees who held the same job

classification as plaintiff) with Johnson v. Kraft Foods North America, Inc., 238

F.R.D. 648, 653 (D.Kan. 2006) (court allowed discovery of documents related to

sales representatives (the position that plaintiff held) and manager positions

within a particular region because plaintiff alleged that defendant improperly

failed to promote sales representatives to management-level positions).

Finally, the court will allow Mr. Murphy to seek information from the four

corporate entities identified in this inquiry with the following caveat.  Kmart

was Mr. Murphy's employer.  He is entitled to know how other similarly-

situated Kmart store managers were treated.  It appears irrelevant to the court

how managers of Sears stores may have been treated.  However, because of the

corporate relationships discussed at footnote 4, *supra*, corporate entities other

than Kmart may have promulgated corporate policies as to performance

expectations for Kmart store managers.  To that extent, inquiry about corporate

entities other than Kmart may be relevant, but the inquiry is limited to

corporate policies concerning Kmart store managers.

### 3.   Third Subject of Examination

The third subject of examination identified in Mr. Murphy's amended

Rule 30(b)(6) deposition notice is "[c]orporate policies or philosophies of all

corporations listed in 1., above, regarding retention or termination of salaried

employees who are 40 years of age or older or had been employed by these entities fifteen (15) or more years." [Docket 66].  Kmart objects to this line of inquiry on many of the same grounds listed above.  First, Kmart argues that it has already produced all information relevant to this subject through less burdensome means, namely answering Mr. Murphy's previous discovery requests.  See Docket 91.  Kmart also alleges that it has already informed Mr. Murphy that it does not maintain specific policies regarding retention of store managers and, thus, should not have to prepare a witness to testify to matters that do not exist in the form requested.  Id.  Kmart argues that Mr. Murphy is not entitled to seek information regarding any entity other than Kmart.  Id.  Finally, Kmart argues that this line of inquiry is improper because it seeks irrelevant information–it is unlimited in time and geographic scope and its reference to length of service is "not a proxy for age discrimination."  Id.

In support of this line of inquiry, Mr. Murphy renews his arguments made in support of the other subjects of examination with the following addition.  See Docket 116.  Mr. Murphy argues that the information learned in response to this line of inquiry could further his claim that Kmart had a plan to eliminate older store managers.  Id.

For the reasons already set forth in this opinion, the court finds that Mr. Murphy is entitled to seek information from corporate entities with the following caveat.  Kmart was Mr. Murphy's employer.  He is entitled to know

how other similarly-situated Kmart store managers were treated.  It appears irrelevant to the court how managers of Sears stores may have been treated. However, because of the corporate relationships discussed at footnote 4, *supra*, corporate entities other than Kmart may have promulgated corporate policies as to Kmart store managers.  To that extent, inquiry about corporate entities other than Kmart may be relevant.

The court also finds that this line of inquiry is not unduly burdensome even if the information has been produced through other means.  Further, with respect to Kmart's contention that the information does not exist in the requested form, Mr. Murphy has the right to explore this issue at the deposition.  However, the court does agree that this line of inquiry is impermissibly broad.  Accordingly, the court orders Mr. Murphy to amend this subject of examination by limiting it:  (1)to the Western Region of the United States, (2) to an appropriate time period, and (3) to employees who have been or are employed as store managers.

### 4.    Fourth Subject of Examination

The fourth subject of examination identified in Mr. Murphy's amended Rule 30(b)(6) deposition notice is "[c]orporate policies or philosophies of all corporations listed in 1., above, regarding retention or termination of salaried employees who were stationed in one position for five (5) years or longer with

the Defendant." [Docket 66]. Kmart raises the same objections to this line of inquiry as it did to the third subject of examination above. <u>See</u> Docket 91.

In support of this line of inquiry, Mr. Murphy makes the same arguments that he did with respect to the third subject of examination. <u>See</u> Docket 116.

Accordingly, for the reasons set forth previously in this opinion, the court orders Mr. Murphy to amend this subject of examination in the same manner as the third subject of examination.

**5.    Fifth Subject of Examination**

The fifth subject of examination identified in Mr. Murphy's amended Rule 30(b)(6) deposition notice is "[c]orporate policies or philosophies of all corporations listed in 1., above, regarding termination or resignation of store managers for Western Region/Western District/Western United States from 2003 to the present." [Docket 66]. Kmart's objections to this line of inquiry are as follows: (1) it is geographically overbroad in that it should be limited to Kmart's District 917; (2) it improperly seeks information from parties other than Kmart; and (3) it is cumulative and unduly burdensome as it seeks information previously produced by Kmart. <u>See</u> Docket 91.

In addition to the arguments already stated, Mr. Murphy maintains that this line of inquiry is relevant because of the following: (1) the information learned may support his claim that Kmart had a plan to eliminate older store managers; (2) there is evidence that Kmart "would try to get rid of managers

who had been in the same store for a long time"; and (3) there is evidence that Kmart used its "developmental plan of action ... to try to force people out." See Docket 116.

For the same reasons set forth previously in this opinion, the court will allow Mr. Murphy to seek information from the four corporate entities identified in this inquiry, to the extent they have information about *Kmart* store managers.  For the reasons set forth previously in this opinion, the court rejects Kmart's remaining objections.  Mr. Murphy shall modify this subject area of his deposition notice to limit the area of inquiry to Kmart store managers.

### 6.    Sixth Subject of Examination

The sixth subject of examination identified in Mr. Murphy's amended Rule 30(b)(6) deposition notice is "[a]ny and all cost containing measures *proposed* pertaining to employees of the store manager-level or higher from 2001 to 2006."  [Docket 66] (emphasis added).  Kmart raises the following objections: (1) the language "cost containing measures" is too vague and ambiguous; (2) this inquiry is temporally and geographically overbroad; and (3) this inquiry seeks irrelevant information as it covers job positions that Mr. Murphy never held.  See Docket 91.  In response, Mr. Murphy raises the same arguments made with respect to other lines of inquiry.  See Docket 116.

The court notes that the phrase "cost containing measures," without further clarification, would cover an extremely broad amount of information which may or may not be relevant to Mr. Murphy's claims. Mr. Murphy states that he is inquiring into cost containing measures *pertaining to employees*. The court interprets this request to refer to measures designed to streamline labor costs, thereby distinguishable from, for example, measures designed to streamline merchandising costs or advertising costs. However, this is simply the court's interpretation. Ultimately, Mr. Murphy bears the burden of describing this line of inquiry with "reasonable specificity," and the court finds that he has not met his burden here. Thus, the court orders Mr. Murphy to clarify what he means by "cost containing measures pertaining to employees" and to clarify which categories of "cost containing measures" are relevant to his claims. Mr. Murphy shall amend this subject of examination accordingly. Mr. Murphy shall also narrow this subject of examination to the Western Region of the United States and to the Kmart store manager position as consistent with the other subjects of examination. For the same reasons set forth previously in this opinion, the court rejects Kmart's argument that this line of inquiry is temporally overbroad.

### 7.     Seventh Subject of Examination

The seventh subject of examination identified in Mr. Murphy's amended Rule 30(b)(6) deposition notice is "[a]ny and all cost containing measure

*implemented* pertaining to employees of the store manager-level and above from 2001 to 2006." [Docket 66] (emphasis added).  Kmart objects on the same grounds listed with respect to subject of examination number seven.  See Docket 91.  In response, Mr. Murphy raises the same arguments made with respect to the other lines of inquiry.  See Docket 116.  Accordingly, the court orders Mr. Murphy to amend this subject of examination in the same manner as the sixth subject of examination.

### 8.   Eighth Subject of Examination

The eighth subject of examination identified in Mr. Murphy's amended Rule 30(b)(6) deposition notice is "[d]efendant's policies and standards issued or promulgated by corporate (all corporations listed in 1., above), expected by store managers from 2001 to the present." [Docket 66].  Kmart objects to this line of inquiry on several grounds.  See Docket 91.  First, Kmart argues that this inquiry is overbroad as it seeks irrelevant information from corporate entities other than Kmart.  Id.  Kmart also argues that this inquiry is not defined with "reasonable particularity" with respect to which policies and standards Mr. Murphy is referring to.  Id.  Kmart maintains that the majority of Kmart's corporate policies bear no relation to Mr. Murphy's claims.  Id.  Kmart also argues that this inquiry is temporally overbroad and should be limited to January 1, 2003, to the present.  Id.  Finally, Kmart argues that this inquiry is

cumulative and unduly burdensome because Kmart has already produced those policies applicable to the store manager position and because Mr. Murphy has already deposed Jerry Rudrude.  Id.

In response, Mr. Murphy raises the same arguments made with respect to other lines of inquiry.  See Docket 116.  Additionally, Mr. Murphy argues that "he should be allowed to discover from Kmart's designee what was expected from Kmart's store managers" in order to determine "whether it was warranted to place [Mr. Murphy] on a development plan of action, which eventually led to his constructive discharge."  Id.

For the reasons set forth previously in this opinion, the court rejects Kmart's argument that this line of inquiry is temporally overbroad and unduly burdensome or cumulative.

The court also rejects Kmart's argument that this line of inquiry should be limited to just Kmart, because corporate entities other than Kmart may have promulgated corporate policies as to Kmart store managers due to the relationships between the corporate entities described at footnote 4.  To that extent, inquiry about corporate entities other than Kmart may be relevant.

However, the court does agree with Kmart that Mr. Murphy's eighth subject of examination is not defined with reasonable particularity. Mr. Murphy seeks all policies and standards expected for Kmart store managers from four corporate entities.  This inquiry is extremely vague and

39

covers information not relevant to Mr. Murphy's claims, such as corporate policies on a Kmart store manager's discretion to hire and fire subordinates or to enter into contracts with third parties for the maintenance of parking lots, both issues that do not appear relevant to the claims and defenses in this lawsuit.  Thus, the court orders Mr. Murphy to amend this subject of examination by specifying which categories or types of corporate policy bearing on Kmart store managers that he wishes to inquire into.

### 9.    Ninth Subject of Examination

The ninth subject of examination identified in Mr. Murphy's amended Rule 30(b)(6) deposition notice is "[e]stablished goals for individual store's gross or net profits from 2000 to present.  This includes goals established for individual District Managers and individual store managers."  [Docket 66]. Kmart objections to this line of inquiry are as follows: (1) it is geographically overbroad and should be limited to Kmart's District 917; (2) it is temporally overbroad and should be limited to January 1, 2003, to the present; (3) it is overbroad in that it seeks information about job positions never held by Mr. Murphy; and (4) it is cumulative as Kmart has already produced net profit reports for stores in District 917 from 2003-2005.  See Docket 91.

In response, Mr. Murphy raises the same arguments made with respect to other lines of inquiry.  See Docket 116.  Additionally, Mr. Murphy argues that this line of inquiry is relevant to show that Kmart may have "set[] him up

to fail" by holding him to more rigorous profit goals than those expected from other stores.  Id.  Mr. Murphy maintains that this information also may be used to rate Mr. Murphy's performance as a store manager by comparing the success of Mr. Murphy's store with other stores.  Id.

The court finds that this line of inquiry should be restricted (1) to Kmart's Western Region and (2) to goals established for individual Kmart store managers (as opposed to Sears store managers) as consistent with the other subjects of examination.  Mr. Murphy shall amend this subject accordingly. The court does not find that this request is temporally overbroad.  Although many of the other subjects of examination are limited to a more narrow time frame, the court does not find a nine-year time period (2000 to the present) to be unreasonable or unduly burdensome.  For the same reasons set forth previously in this opinion, the court also rejects Kmart's argument that this request is unduly burdensome because much of the information has already been produced.

**10.   Tenth Subject of Examination**

The tenth subject of examination identified in Mr. Murphy's amended Rule 30(b)(6) deposition notice is "[p]rofit and loss statements for Kmart Corporation, Kmart Holding Corporation, Sears Corporation, and Sears Holding Corporation from 2001 to the present."  [Docket 66].  Kmart objects to this line of inquiry, arguing that (1) Mr. Murphy is not entitled to the corporate

41

information of any entity other than Kmart; (2) a significant amount of financial information regarding Kmart is available to Mr. Murphy through less burdensome means, namely through various internet sites; and (3) profit information is irrelevant to the issue of damages because the Age Discrimination in Employment Act does not award punitive damages, but rather permits liquidated damages based solely on Mr. Murphy's back pay. <u>See</u> Docket 91.

In response, Mr. Murphy raises the same arguments made with respect to other lines of inquiry. <u>See</u> Docket 116. Additionally, Mr. Murphy claims that this information is necessary to support his punitive damages claims. <u>Id.</u>

The Age Discrimination in Employment Act does not allow for the recovery of punitive damages. <u>See</u> <u>Williams v. Valentec Kisco, Inc.</u>, 964 F.2d 723, 729 (8th Cir. 1992) ("Punitive damages as such are not recoverable under the ADEA."). However, in his complaint, Mr. Murphy also raises a state law claim of intentional infliction of emotional distress. <u>See</u> Docket 1, page 4. Mr. Murphy's age discrimination and intentional infliction of emotional distress claims are separate claims. <u>See</u> <u>Hansen v. McLeod USA Publishing Co.</u>, 2006 WL 978705 (D.S.D. April 12, 2006) (plaintiff sued defendant for both age discrimination and intentional infliction of emotional distress). Mr. Murphy seeks punitive damages with respect to his claim of intentional infliction of emotional distress.

42

Under South Dakota law, punitive damages are prohibited unless expressly authorized by statute.  See SDCL § 21-1-4.  Punitive damages in tort actions are authorized by South Dakota law.  See SDCL § 21-3-2.  A necessary element which the plaintiff must prove in order to submit a request for punitive damages to the jury is that the defendant acted with malice, either actual or presumed.  See Holmes v. Wegman Oil Co., 492 N.W.2d 107, 112-113 (S.D. 1992); SDCL § 21-3-2.

Actual malice is denied as "a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person."  Harter v. Plains Ins. Co., 579 N.W.2d 625, 634 (S.D. 1998).  Presumed malice is shown when a person acts willfully or wantonly to the injury of others.  Case v. Murdock, 488 N.W.2d 885, 891 (S.D. 1992).  Presumed malice "implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations," Dahl v. Sittner, 474 N.W.2d 897, 900 (S.D. 1991), or evidenced by a "reckless disregard for one's rights."  Flockhart v. Wyant, 467 N.W.2d 473, 478 (S.D. 1991).  One purpose of punitive damages is to deter the defendant from repeating the wrongful conduct and to deter others from engaging in the same conduct.  Grynberg v. Citation Oil & Gas Corp., 573 N.W.2d 493, 504 (S.D. 1997).  Once a case has been made out for submission to the jury of a request for punitive damages,

43

one element the jury is entitled to consider is the defendant's financial condition.  <u>Roth v. Farner-Bocken Co.</u>, 667 N.W.2d 651, 665-666 (S.D. 2003).

South Dakota law also provides that before any discovery related to punitive damages may be had by the plaintiff, the court must hold an evidentiary hearing and may allow such discovery only after concluding that the plaintiff showed by clear and convincing evidence that there is a reasonable basis to believe that there has been willful, wanton, or malicious conduct by the defendant.  <u>See</u> SDCL § 21-1-4.1.  Therefore, *if* § 21-1-4.1 applies to Mr. Murphy's punitive damages claim, he is not entitled to information about Kmart's profit margins unless Mr. Murphy first proves by clear and convincing evidence that there is a reasonable basis to believe that Kmart acted maliciously.

Substantive questions of law as to Mr. Murphy's state common law claim of intentional infliction of emotional distress are governed by South Dakota law.  <u>See</u> <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78-79 (1938); <u>Smith v. Tenet Healthsystem SL, Inc.</u>, 436 F.3d 879, 886 (8th Cir. 2006).  However, matters of procedure are determined with reference to federal law.  <u>Tompkins</u>, 304 U.S. at 78-79.  Thus, the question as to the applicability of § 21-1-4.1 depends on whether that provision is substantive or procedural.

In one of the first cases to interpret § 21-1-4.1, the South Dakota Supreme Court was presented with the question of whether that statute could

44

be applied retroactively.  Dahl, 474 N.W.2d at 901-902.  The court held that statutes which affect only procedural matters can be given full retroactive application to cases which were already pending at the time the statute was enacted, while statutes which are substantive in nature may only be applied prospectively.  Id.  Because § 21-1-4.1 did not alter the standard of proof required to obtain punitive damages, but only required a particular showing be made prior to obtaining discovery about a defendant's net worth in order to prevent harassment, the South Dakota Supreme Court concluded that § 21-1-4.1 was procedural.  Id. at 902.  Accordingly, the court gave the statute full retroactive application.  Id.

Relying on Dahl, some district courts have taken the position that because § 21-1-4.1 is procedural for purposes of analyzing retroactivity, it is also procedural under Erie v. Tompkins and, thus, the statute has no application in federal court where state law supplies the rule of decision.  See, e.g. Ammann v. Massey-Ferguson, Ltd., 933 F. Supp. 840, 842-843 (D.S.D. 1996).  Furthermore, the Ammann court held that § 21-1-4.1, which it characterized as a "discovery barricade," directly conflicted with Fed. R. Civ. P. 26, which provides for broad discovery.  Id.  See also Friedl v. Ford Motor Co., 2005 WL 2044552 at **5-6 (D.S.D.  Aug. 25, 2005) (refusing the "clear and convincing proof of a reasonable basis" from § 21-1-4.1 in favor of a preponderance of the evidence standard because the clear-and-convincing

standard from § 21-1-4.1 was procedural only).  Another district court

apparently gave full application to § 21-1-4.1 in a federal case premised on

diversity jurisdiction.  <u>See</u> <u>Brown v. Youth Services Intern. of S.D., Inc.</u>, 89 F.

Supp. 2d 1095, 1107 (D.S.D. 2000).

      The Eighth Circuit addressed the standard for granting punitive damages

under South Dakota law in <u>Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.</u>,

418 F.3d 820, 837-840 (8th Cir. 2005).  In that case, the defendant contended

on appeal that the district court erred in submitting the issue of punitive

damages to the jury.  <u>Id.</u> at 837.  The Eighth Circuit stated that, under South

Dakota law, a court may submit the issue of punitive damages to a jury only

"when clear and convincing evidence shows a 'reasonable basis' to believe there

has been willful, wanton, or malicious conduct."  <u>Id.</u>  In so holding, the Eighth

Circuit cited to a South Dakota Supreme Court decision, <u>Isaac v. State Farm

Mut. Auto Ins. Co.</u>, 522 N.W.2d 752, 761 (S.D. 1994).  However, although the

Eighth Circuit cited the <u>Isaac</u> decision for authority, the language used by the

Eighth Circuit in its opinion derived straight from § 21-1-4.1.  <u>Compare</u> <u>Diesel

Machinery, Inc.</u>, 418 F.3d at 837 (clear and convincing evidence shows a

reasonable basis to believe there has been malice), <u>with</u> SDCL § 21-1-4.1 (clear

and convincing evidence shows a reasonable basis to believe the defendant

acted with malice).  The <u>Isaac</u> decision, which the Eighth Circuit cited as

authority, was itself applying § 21-1-4.1.  <u>See</u> <u>Isaac</u>, 522 N.W.2d at 761 (citing

and discussing SDCL § 21-1-4.1 as the standard for submission of punitive damages to a jury).  Thus, apparently, the Eighth Circuit applied SDCL § 21-1-4.1 to determine whether a federal court sitting in diversity properly submitted the issue of punitive damages to a jury.  Diesel Machinery, Inc., 418 F.3d at 837.  There are no subsequent cases in the Eighth Circuit or the District of South Dakota interpreting, applying, or expounding on this holding in Diesel Machinery, Inc..

Decisions of the Eighth Circuit represent binding precedent on this court.  It is unclear whether Diesel Machinery, Inc. requires application of § 21-1-4.1 in this discovery dispute.  On the one hand, there is a distinction between a party's right to discovery–which is the issue here–and the issue of when punitive damages may be submitted to a jury–which was the issue in Diesel Machinery, Inc..  Also, the Restatement (Second) Conflicts of Laws provides that, consistent with Tomkins, rules concerning whether a party has a right to a jury trial or a court trial, whether the judge has the power to comment on the evidence, and other rules as to how a trial is conducted are generally considered procedural.  See Restatement (2d) Conflicts of Laws § 122 (2008).  Thus, under Tomkins as well as Dahl, the rule in § 21-1-4.1 which concerns the manner in which discovery is conducted should be considered "procedural" and thus have no application in federal court.

47

Still, the language used by the Eighth Circuit in <u>Diesel Machinery, Inc.</u> is unavoidable:  it comes directly from the statute.  If the Eighth Circuit intended that the statute have no application whatsoever in federal court, why recite the standard set forth in the statute?

One thing courts *can* agree upon, whether they conclude that § 21-1-4.1 is applicable in federal court or not, the enactment of § 21-1-4.1 by the South Dakota legislature certainly represents a legislative policy of protecting defendants from harassment through the discovery of net worth and other financial data where a *prima facie* case for punitive damages has not been made out.  <u>See</u> <u>Bierle v. Liberty Mut. Ins. Co.</u>, 792 F. Supp. 687, 691-692 (D.S.D. 1992).

In this case, Mr. Murphy seeks discovery of Kmart's gross and net profits on the basis that such discovery is relevant to punitive damages.  Although there are actions where this type of discovery was allowed without additional showing, those cases tend to be those where the parties have finished discovery and have briefed the court on summary judgment motions.  <u>See e.g.</u> <u>O'Daniel v. Na</u>, Civ. 05-5089, Docket No. 173 (D.S.D. Jan. 9, 2009).  In <u>O'Daniel</u>, the court granted a motion for discovery of financial information relevant to punitive damages under circumstances where the case had been pending for three and one-half years, trial was less than three months away, the discovery deadline had passed, and summary judgment motions had been fully briefed and

48

decided.  In cases like O'Daniel, the parties and the court were fully aware of the evidence in the case before discovery on punitive damages was embarked upon and the court had the benefit of not only the complaint and answer, but also various affidavits, exhibits, and deposition testimony in determining whether punitive damages discovery was warranted.

By contrast, this case has been pending for only slightly more than a year.  In addition, although numerous discovery motions have been filed, these do not depend upon the presentation of evidence for their determination.  Rather, arguments of a legal nature were asserted.  The facts adduced by the parties in the discovery motions do not enlighten the court as to the specific facts asserted in support of Mr. Murphy's state law claim.  In addition, the court notes that the discovery deadline has not yet passed and no trial date has been set.  This case is not procedurally in the mature state that the court found the O'Daniel case when it allowed discovery of financial information for purposes of punitive damages.

In addition, Mr. Murphy will have to prove the following elements in order to prevail on his claim of intentional infliction of emotional distress:

1.    Kmart engaged in extreme and outrageous conduct;

2.    Kmart intended to or recklessly caused Mr. Murphy severe emotional distress;

3.    Kmart's conduct did in fact cause the plaintiff severe emotional distress; and

49

      4.     Mr. Murphy suffered an extreme disabling emotional response to Kmart's conduct.

See Anderson v. First Century Fed. Credit Union, 738 N.W.2d 40, 51-52 (S.D. 2007); Richardson v. East River Elect. Power Coop., 531 N.W.2d 23, 27-28 (S.D. 1995); Nelson v. WEB Water Dev. Ass'n., Inc., 507 N.W.2d 691, 698 (S.D. 1993).  "Extreme and outrageous conduct" is defined as "conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." Richardson, 531 N.W.2d at 27.  It is conduct that is "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. (quoting Tibke v. McDougall, 479 N.W.2d 898, 907 (S.D. 1992)).

The South Dakota Supreme Court has cited the Restatement (2d) Torts, § 46 cmt. h (1965), approvingly for the proposition that, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. . ." Richardson, 531 N.W.2d at 27-28.  Although the court intimates nothing about Mr. Murphy's ability to ultimately prove facts that show extreme and outrageous conduct, the bare allegations of the complaint do not conclusively show conduct that the South Dakota Supreme Court has previously deemed to be extreme and outrageous.  See Richardson, 531 N.W.2d at 28 (discussing various factual scenarios where the court had affirmed summary judgment on

intentional infliction claims, and factual scenarios where it had reversed a grant of summary judgment because there was a legitimate question of fact). This is one of many facts lending uncertainty to the appropriateness of punitive damages discovery at this point in this case.

The Eighth Circuit certainly seems to suggest in Diesel Machinery, Inc. that SDCL § 21-1-4.1 has some application in federal court actions in which South Dakota law supplies the rule of decision.  If so, this court presumes that the *prima facie* showing of malice could be done through a hearing, through pleadings, or through the liability evidence presented at trial.  Thus, a separate "mini-trial" on punitive damages would not be necessary in every case. However, even if this court's reading of Diesel Machinery, Inc. is not correct and § 21-1-4.1 has no application in a federal diversity action, the court finds that discovery of punitive damages information at this juncture of this case is premature.  The court has authority to limit discovery on its own motion.  See Fed. R. Civ. P. 26(b)(2)(C).  This court will exercise this authority at the present time and grant Kmart's motion for protection from this discovery at the present juncture.  When this case is "fully flowered" as the O'Daniel case was, and the parties and the court are more informed as to the facts in support of Mr. Murphy's intentional infliction of emotional distress claim, the parties are free to revisit this issue and present arguments anew as to discovery of punitive damages information.

As to any future discovery motions along these lines, the court notes that one of the purposes of punitive damages is to deter the wrong-doer from committing similar misdeeds in the future. <u>Grynberg</u>, 573 N.W.2d at 504. In addition, the parties in this action have stipulated that Kmart is the appropriate defendant and have stipulated that Sears Holding Corporation may be dismissed as a party defendant. <u>See</u> Docket 19. Therefore, it would appear to the court that if Mr. Murphy is allowed to discover punitive damages information at some point in the future, such discovery would be limited to the named defendant, Kmart.

**E.     Kmart's Request for Sanctions**

If the court grants a motion for a protective order, the court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including the attorney's fees." <u>See</u> Fed. R. Civ. P. 37(a)(5)(A). However, the court must not make such an award if the "opposing party's nondisclosure, response, or objection was substantially justified." <u>See</u> Fed. R. Civ. P. 37(a)(5)(A)(ii). The court finds that many of Mr. Murphy's objections Kmart's motion for a protective order were substantially justified, as reflected in the court's opinion. Accordingly, the court declines to award Kmart with its reasonable attorney's fees and costs incurred in filing the instant motion.

**CONCLUSION**

Based on the foregoing, the court hereby

ORDERS that Kmart's motion to for a protective order and motion to quash [Docket 90] is granted in part and denied in part in accordance with the above opinion.  The Amended Rule 30(b)(6) Notice of Deposition dated October 15, 2008, is quashed.  Plaintiff may serve Kmart with another notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6) modified in accordance with this opinion and Kmart shall respond to that notice accordingly.

**NOTICE TO PARTIES**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72(a).  Failure to file timely objections will result in the waiver of the right to appeal matters not raised in the objections.  Id.  Objections must be timely and specific in order to require review by the district court.

Dated January 27, 2009.

BY THE COURT:

/s/ Veronica L. Duffy

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

53