UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DOUG MURPHY, | ) | CIV. 07-5080-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING PLAINTIFF'S |
| vs. | ) | MOTION FOR LEAVE TO ALLOW |
| | ) | SUPPLEMENT TO DESIGNATION |
| KMART CORPORATION, | ) | OF EXPERT WITNESS |
| | ) | [DOCKET 169] |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

This matter is before the court pursuant to plaintiff Doug Murphy's

motion to designate his treating psychologist as an expert witness after the

deadline for expert witness disclosure has passed. [Docket 169]. Defendant

Kmart Corporation objects to the motion. [Docket 172]. Mr. Murphy has

represented to the court that he has made a good-faith effort to resolve this

discovery dispute without the court's intervention. [Docket 169]. Mr. Murphy's

motion was referred to this magistrate judge for resolution pursuant to the

district court's order dated May 26, 2009. [Docket 175].

## FACTS AND PROCEDURAL HISTORY

On November 5, 2007, Mr. Murphy filed suit against Kmart Corporation

("Kmart"), alleging one count of age discrimination and one count of intentional

infliction of emotional distress stemming from the loss of his employment as a

Kmart store manager. The court incorporates by reference the factual history

of this case as set forth in greater detail in the court's previous order dated

December 27, 2008. [Docket 132]. The following recitation includes facts

relevant to the instant motion. Additional facts will be included throughout

this opinion as needed.

The district court's first scheduling order required Mr. Murphy to identify

his expert witnesses by June 1, 2008, and to disclose expert reports by

July 1, 2008, and required Kmart to identify its experts by August 1, 2008, and

to disclose expert reports by September 2, 2008. [Docket 21]. The court also

ordered all discovery to be completed by October 1, 2008. Id. On

August 1, 2008, Mr. Murphy filed a motion to extend his discovery deadlines,

particularly the deadlines pertaining to expert discovery, arguing that

additional discovery was needed in order to determine if an employment

expert/economist was required. [Docket 26]. Also on August 1, 2008, Kmart

filed a motion to extend, in relevant part, its deadline for disclosing expert

reports. [Docket 28]. On August 14, 2008, the parties filed a joint stipulation

that, in relevant part, allowed Kmart to disclose its expert reports by

December 1, 2008, extended fact discovery for both parties until

November 1, 2008, and extended the deadline for deposing Kmart's experts to

December 15, 2008. [Docket 33]. The parties were unable to resolve

Mr. Murphy's motion to extend its expert deadlines. Id.

The district court adopted the parties' stipulation, see Docket 35, and

granted Mr. Murphy's motion to extend his expert deadlines, see Docket 46.

The district court ordered Mr. Murphy to disclose his experts by

September 30, 2008, and to provide expert reports by October 7, 2008.

[Docket 46].  Kmart's deadline for deposing Mr. Murphy's experts was extended

to October 21, 2008.  Id.

On September 25, 2008, Mr. Murphy designated Donald Frankenfeld as

his sole expert witness.  [Docket 53].  Mr. Murphy indicated that

Mr. Frankenfeld would testify as to Mr. Murphy's loss of wages and loss of

future earnings, including salary, benefits, and pension.  Id.  On

September 26, 2008, Mr. Murphy supplemented his expert designation by

indicating that Mr. Frankenfeld might also testify as to the "relative

performance of Doug Murphy and/or his store's performance in relation to

other stores and peers." [Docket 55].  On October 8, 2008, Kmart designated

Dr. George Langelett as its economic expert.  [Docket 60].

On October 24, 2008, Mr. Murphy moved the district court for a 90-day

extension of the November 1, 2008, discovery deadline.  [Docket 80].  On

November 17, 2008, Kmart moved the district court for an extension of the

December 1, 2008, deadline for dispositive motions.  [Docket 108].  The district

court granted both motions, setting the discovery deadline at February 17,

2009, and the motions deadline at March 17, 2009.  [Dockets 109 & 111].

On February 4, 2009, Mr. Murphy moved the district court for a 90-day

extension of the February 17, 2009, discovery deadline. [Docket 147]. The district court granted Mr. Murphy's motion, setting the new discovery deadline at June 17, 2009, and the motions deadline for July 17, 2009. [Docket 165].

On April 9, 2009, Mr. Murphy moved the court to be allowed to supplement his expert witness disclosure by designating Dr. Dewey Ertz as an expert. [Docket 169]. Dr. Ertz was Mr. Murphy's treating psychologist and was designated as a fact witness to testify at trial. [Docket 170]. Mr. Murphy argues that he was substantially justified in not identifying Dr. Ertz as an expert before the deadline for doing so had passed because Mr. Murphy was not being treated by Dr. Ertz at the time and did not intend to resume treatment. Id. Mr. Murphy also argues that his failure to identify Dr. Ertz as an expert was harmless because of the following: (1) Kmart was in possession of Dr. Ertz's treatment notes and testing data; (2) Kmart knew that Dr. Ertz would testify at trial as a treating psychologist; (3) Kmart has already deposed Dr. Ertz regarding his opinions of this case; and (4) Dr. Ertz' expert testimony at trial would be the same as his deposition testimony. Id. Finally, Mr. Murphy argues that treating physicians are not subject to the expert disclosure requirement. Id.

Kmart objects to Mr. Murphy's motion, arguing that Mr. Murphy has not shown good cause for failing to identify Dr. Ertz as an expert witness. [Docket 172]. Kmart also argues that Dr. Ertz' role as a treating psychologist

4

does not automatically qualify him to be an expert witness.  Id.  Kmart lastly

argues that it would be prejudiced by Dr. Ertz' designation as an expert witness

because (1) Kmart developed its litigation strategy based, in part, on its

expectation that Dr. Ertz would testify at trial as a treating psychologist and

not as an expert; and (2) Kmart did not have access to Dr. Ertz' expert report

while deposing Dr. Ertz and still has not received Dr. Ertz' expert report.  Id.

## DISCUSSION

### A.    Whether Dr. Ertz May Be Designated an Expert Witness

The expert disclosure requirements are set forth in Federal Rule of Civil

Procedure 26(a)(2), which provides as follows:

**(2)     *Disclosure of Expert Testimony.***

(A)     *In General.*  In addition to the disclosures required by
Rule 26(a)(1), a party must disclose to the other parties
the identity of any witness it may use at trial to
present evidence under Federal Rule of Evidence 702,
703, or 705.

(B)     *Written Report.*  Unless otherwise stipulated or ordered
by the court, this disclosure must be accompanied by
a written report–prepared and signed by the witness–if
the witness is one retained or specially employed to
provide expert testimony in the case or one whose
duties as the party's employee regularly involve giving
expert testimony. The report must contain:

(i)     a complete statement of all opinions the witness
will express and the basis and reasons for them;

(ii)    the data or other information considered by the
witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure.

(D) *Supplementing the Disclosure.* The parties must supplement these disclosures when required under Rule 26(e).

Fed. R. Civ. P. 26(a)(2) (emphasis in original).

The Eighth Circuit has held that " 'a district court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the [district] [c]ourt's pretrial order, and such a ruling will be reversed on appeal only for abuse of discretion.' " Dabney v. Montgomery Ward & Co., Inc., 692 F.2d 49, 51 (8th Cir. 1982) (quoting Iowa-Mo. Enterprises, Inc. v. Avren,

639 F.2d 443, 447 (8th Cir. 1981); Admiral Theatre Corp. v. Douglas Theatre

Co., 585 F.2d 877, 897-98 (8th Cir. 1978)); see also Citizens Bank of Batesville,

Arkansas v. Ford Motor Co., 16 F.3d 965, 966 (8th Cir. 1994) (The trial court's

discretionary power includes decisions about whether to allow the testimony of

witnesses not listed prior to trial.") (additional citations omitted).  The

importance of requiring timely compliance with a court's scheduling order

should not be underestimated.  Dabney, 692 F.2d at 52; see also Jochims v.

Isuzu Motors, Ltd., 144 F.R.D. 350, 356 (S.D.Iowa 1992) ("A...scheduling order

is not a frivolous piece of paper, idly entered, which can be cavalierly

disregarded by counsel without peril.") (additional citation and internal

quotation marks omitted).  "As a vehicle designed to streamline the flow of

litigation through...crowded dockets, ...[courts] do not take...[scheduling]

orders lightly, and will enforce them."  Bradford v. DANA Corp., 249 F.3d 807,

809 (8th Cir. 2001) (additional citations omitted); see also Jochims, 144 F.R.D.

at 356 ("Scheduling orders have become increasingly critical to the district

court's case management responsibilities because it is well known that we

litigate these days under the burden of heavy caseloads and clogged court

calendars.") (additional citation and internal quotation marks omitted).

District courts, however, "should not adhere blindly to the letter of the

order 'no matter what the reason' for a party's non-compliance."  Dabney, 692

F.2d at 52.  "Flexible application of pretrial orders is within the sound

discretion of the [d]istrict [c]ourt." Patterson v. F.W. Woolworth Co., 786 F.2d 874, 879 (8th Cir. 1986); see also Tomlin v. Holecek, 158 F.R.D. 132, 135 (D.Minn. 1994) ("[B]lind adherence to the time constraints of a [s]cheduling [o]rder, without a proper regard for the bases and effects of the non-compliance, may well be inconsistent with the dominant interest of a trial in ascertaining the truth.") (additional citations omitted).

To facilitate this flexible approach to pretrial orders, the Eighth Circuit in Patterson set forth a test, or set of factors, to be considered by a district court when deciding whether to exclude a witness's testimony at trial if the witness was "not made known in a manner complying with a pretrial order." Patterson, 786 F.2d 879. These factors include "the reason for failing to name the witness, the importance of the witness's testimony, the opposing party's need for time to prepare for the testimony, and whether a continuance would be helpful." Id. (adopting the factors set forth by the Fifth Circuit in Murphy v. Magnolia Elec. Power Ass'n, 639 F.2d 232 , 235 (5th Cir. 1981)).[1]

_____

[1]Although the Patterson test is the more commonly used, the Eighth Circuit in Morfeld v. Kehm, 803 F.2d 1452, 1455 (8th Cir. 1986) set forth a similar test. See Marti v. City of Maplewood, Mo., 57 F.3d 680, 683 ("Two similar tests, or set of factors, have been used by this court to determine whether a witness's testimony should be excluded if that witness was not named in the pretrial order."). The Morfeld test focuses on the following factors: (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified"; (2) "the ability of that party to cure the prejudice"; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court"; and (4) "bad faith or willfulness in failing to comply with

With respect to the first factor, the court finds that Mr. Murphy has not shown just cause for failing to identify Dr. Ertz as an expert witness. Mr. Murphy states that he did not make such a designation because he was not treating with Dr. Ertz at the time when his expert disclosures were due nor did he anticipate resuming treatment with Dr. Ertz. Mr. Murphy implies that, prior to the September 30, 2008, deadline for disclosing his expert witnesses, he only had one treatment session with Dr. Ertz, which occurred on February 28, 2008. [Docket 170, p.3]. This characterization of Mr. Murphy's treatment history with Dr. Ertz is inaccurate. Mr. Murphy initially saw Dr. Ertz on February 8, 2008, for a psychological evaluation. [Docket 171, Exhibit 3, p. 23, lines 23-25; p. 24, lines 1-2]. After this initial visit, Mr. Murphy returned on February 11, 2008, to take the Minnesota Multiphasic Personality Inventory Test ("MMPI") and undergo a mental status examination. Id. at p. 26, lines 11-17; p. 32, lines 10-18. On February 28, 2008, Dr. Ertz discussed Mr. Murphy's MMPI-II profile, stressors, and coping mechanisms with him. Id. at p. 97, lines 12-22; p. 99, lines 17-24]. Approximately eleven months past before Mr. Murphy resumed treatment with Dr. Ertz, with his next visit occurring on November 25, 2008. Id. at p. 106, lines 3-12. Mr. Murphy

---

the court's order." Morfeld, 803 F.3d at 1455 (adopting the test set forth in Spray-Rite Serv. Corp. V. Monsanto Co., 684 F.2d 1226, 1245 (7th Cir. 1982)). As set forth in this opinion, the court finds that, under either test, preventing Dr. Ertz from testifying as an expert witness would be unwarranted.

saw Dr. Ertz again on December 23, 2008, and for the last time on January 21, 2009.  Id. at p. 111, lines 2-5; p. 118, lines 16-19; p. 122, lines 10-12.  Each visit lasted approximately 45-50 minutes.

Considering that Mr. Murphy had three sessions with Dr. Ertz in February of 2008, which included psychological testing, it is puzzling that Mr. Murphy chose not to designate Dr. Ertz as an expert at the outset, particularly since Mr. Murphy has alleged a claim of intentional infliction of emotional distress.  It is also puzzling that Mr. Murphy chose to wait so long to resolve this issue.  The deadline for disclosing the identify of Mr. Murphy's expert witnesses was September 30, 2008.  During the February 3, 2009, deposition of Dr. Ertz, the parties disputed whether Dr. Ertz was an identified expert versus a treating psychologist testifying as a fact witness.  [Docket 173, Exhibit D, p. 131, lines 13-21].  In a letter dated February 9, 2009 to Kmart's counsel, Mr. Murphy's counsel stated that "I thought it was both parties' understanding that when Mr. Murphy decided to resume treating with Dr. Ertz, that he would then be our expert witness at trial."  [Docket 171, Exhibit 4; Docket 173, Exhibit E].  In a letter dated February 10, 2009, Kmart expressed surprise that Mr. Murphy intended to call Dr. Ertz as an expert witness and listed its objections to designating Dr. Ertz as such.  [Docket 173, Exhibit F].  Mr. Murphy did not file his motion for leave to designate Dr. Ertz as an expert witness until April 9, 2009.

Although this delay is troublesome, the court cannot say that

Mr. Murphy chose the path of non-disclosure as a deliberate, tactical ploy to

gain some competitive advantage.  Perhaps Mr. Murphy believed that Dr. Ertz'

status as an expert witness was assumed in light of his role as Mr. Murphy's

treating psychologist and given that Dr. Ertz' records had previously been

provided to Kmart.  However, the Federal Rules of Civil Procedure demand the

formal designation of expert witnesses.  Musser v. Gentiva Health Services, 356

F.3d 751, 757-58 (7th Cir. 2004).  As the Seventh Circuit explained:

> Formal disclosure of experts is not pointless.  Knowing the identity
> of the opponent's expert witnesses allows a party to properly
> prepare for trial.  [The defendant] should not be made to assume
> that each witness disclosed by the [plaintiffs] could be an expert
> witness at trial.  The failure to disclose experts prejudiced [the
> defendant] because there are countermeasures that could have
> been taken that are not applicable to fact witnesses, such as
> attempting to disqualify the expert testimony on grounds set forth
> in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,
> 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), retaining rebuttal
> experts, and holding additional depositions to retrieve the
> information not available because of the absence of a report.  In
> sum,...even treating physicians and treating nurses must be
> designated as experts *if they are to provide expert testimony.*

Id. at 757-58 (internal citation omitted) (emphasis added) (rejecting argument

that designating, as an expert, a witness already known to the opposing party

would be a pointless formality).[2]

---

[2]The court acknowledges that "[w]here a person's profession necessarily
involves scientific, technical, or specialized knowledge–for example, because the
person is a physician or an actuary–the line between 'expert' and 'lay' opinion
may be difficult to draw."  Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins.

The court finds that Mr. Murphy's failure to timely designate Dr. Ertz as an expert witness was attributable to either "oversight, neglect or inadvertence." See Tomlin, 158 F.R.D. at 136. "In and of itself, such an explanation for untimely expert disclosures is insufficient to warrant an exclusion of the testimony of those experts who were so belatedly disclosed." Id. (citing Citizens Bank, 16 F.3d at 967 ("[R]ecord was devoid of any evidence which might indicate bad faith or intentional late disclosure...")). This is not a case where Mr. Murphy surprised Kmart on the eve of trial with Dr. Ertz'

_____

Co., 255 F.R.D. 645, 657 (N.D.Iowa 2009) (additional citations omitted). The Seventh Circuit in Musser provided an excellent discussion of the disclosure of witnesses under Federal Rule of Civil Procedure 26. See Musser, 356 F.3d at 756-758. "The Federal Rules of Civil Procedure divide potential witnesses into three categories for the purposes of disclosure." Id. at 756. The first category includes fact witnesses who are to be disclosed pursuant to Rule 26(a)(1)(A). Id. The second and third categories encompass those witnesses who are to give expert testimony. Id. "*[A]ll* witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A)." Id. (emphasis in original). Expert testimony relies on " 'scientific, technical, or other specialized knowledge.' " Id. at 757 (quoting Fed. R. Evid. 701). "Thus, a treating doctor (or similarly situated witness) is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation." Id. (additional citations omitted).

Under Rule 26(a)(2)(B), however, only those witnesses "retained or specially employed to provide expert testimony" must submit an expert report. Id. at 756-757. "The commentary to Rule 26 supports this textual distinction between retained experts and witnesses providing expert testimony because of their involvement in the facts of the case: a 'treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.' " Id. at 757 (citing Fed. R. Civ. P. 26, 1993 amendments, subdivision (a), paragraph (2)).

designation as an expert, thereby resulting in unfair prejudice to Kmart.  See

Sellers v. Mineta, 350 F.3d 706, 711-12 (8th Cir. 2003) (upholding the district

court's refusal to allow undisclosed witness to testify when the issue arose late

in the trial); Bizzle v. McKesson Corp., 961 F.2d 719, 722 (8th Cir. 1992)

(upholding the district court's exclusion of expert testimony at trial when the

witness was designated an expert only 13 days before trial).

With respect to the second factor, "[i]f the testimony is 'important' to the

party against whom the exclusion is sought, then its 'importance' weighs in

favor of its inclusion."  Boone v. Moore, 980 F.2d 539, 542 (8th Cir. 1992)

(additional citations omitted).  Here, the court finds that the expert testimony of

Dr. Ertz is critical to the issue of damages and to Mr. Murphy's claim of

intentional infliction of emotional distress.

The third factor the court is to consider is the amount of time Kmart

would need to properly prepare for Dr. Ertz' expert testimony.  See Patterson,

786 F.2d at 879.  The court notes that Kmart has in its possession Dr. Ertz'

treatment records and testing results with respect to Mr. Murphy.  Further,

Kmart has already conducted an extensive deposition of Dr. Ertz, which

occurred on February 3, 2009.  It appears that Kmart has already retained a

consulting expert to review Mr. Murphy's medical records, including those from

Dr. Ertz' office, see Docket 170, p. 4; Docket 173, Exhibit F., although it is

unknown if Kmart has designated this expert as a testifying expert.  Although

the court recognizes that Kmart prepared for Dr. Ertz' *lay* testimony, the court does not believe that the burden on Kmart to prepare for Dr. Ertz' *expert* testimony would be onerous or inordinate. Dr. Ertz has already been designated to testify as Mr. Murphy's treating psychologist. The substance of Dr. Ertz' personal observations and knowledge with respect to Mr. Murphy's mental state has already been disclosed to Kmart through Dr. Ertz' deposition. The burden on Kmart would be much greater if Mr. Murphy sought to designate an unknown witness as an expert. However, this is not the case here. The prejudice to Kmart by this late disclosure may be cured by re-deposing Dr. Ertz, if necessary, and by designating Kmart's own expert witness, if it has not already done so.

Finally, with respect to the final <u>Patterson</u> factor, this court does not have the authority to continue the district court's scheduling order. Further, Mr. Murphy has not requested such a continuance. Considering that the current June 17, 2009, discovery deadline is fast approaching, such a request by either party may be appropriate, particularly if Dr. Ertz is to be re-deposed. The court also notes that Mr. Murphy filed his present motion on April 9, 2009, prior to the close of the discovery period. The court finds persuasive the fact that the district court has not yet scheduled the trial in this case; thus, designating Dr. Ertz as an expert witness at this stage of litigation should not unduly delay the course of proceedings. <u>See</u> <u>Benson v. Giordano</u>, No. CIV. 05-

4088-KES, 2008 WL 2781202 at *3 (D.S.D. June 9, 2008) (finding that defendant would not be prejudiced by the late disclosure of the identity and report of plaintiff's expert because the defendant had five months before the trial to depose the expert and to designate a responding expert).

In light of the factors announced in Patterson and in looking at the totality of the circumstances surrounding this issue, the court finds that it would be appropriate to permit Mr. Murphy to designate Dr. Ertz as an expert witness. "Subservience to a [s]cheduling [o]rder...should [not] overshadow [the court's] fundamental obligation to ascertain the truth, at least in the absence of grave prejudice to the compliant party." Tomlin, 158 F.R.D. at 136. Dr. Ertz shall be allowed to testify at trial as to the "nature and extent of the injury he observed and diagnosed, the treatment he rendered for that injury, the prognosis, and future care."[3] See Aberle v. Polaris Industries, Inc., No. CIV.

---

[3]Mr. Murphy has not requested that Dr. Ertz be allowed to submit an expert report, and thus, this court shall not allow Dr. Ertz to do so. Further, Kmart has indicated that it will be prejudiced by the fact that Dr. Ertz has not provided an expert report. [Docket 172 at p. 8]. However, it does not appear that Mr. Murphy is seeking to introduce testimony that would require the disclosure of an expert report. In his reply brief, Mr. Murphy indicates that he wanted to designate Dr. Ertz as an expert witness so that Dr. Ertz could testify as to Mr. Murphy's "diagnosis, causation, future care, etc." [Docket 174 at p. 2].

The general premise is that treating physicians are not required to provide expert reports even if providing expert testimony. See Fed. R. Civ. P. 26 advisory committee's notes to the 1993 amendments. The district court in Navrude provided a thorough and reasoned discussion of when treating physicians, who are identified as expert witnesses, are required to provide expert reports. See Navrude, 2003 WL 356091 at *7.

The starting point for determining whether a treating physician is subject to Rule 26(a)(2)(B) disclosures is the first sentence of the Rule itself, which requires the detailed, written disclosures "with respect to a witness who is retained or specially employed to provide expert testimony."  Courts draw a distinction between "hired guns" who examine a patient or a patient's records for purposes of litigation, and treating physicians whose opinion testimony "is based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial."  A treating physician's opinions regarding causation, degree of permanent disability, and need for future medical care "are a necessary part of the treatment of the patient."

A key factor in determining whether a treating physician is subject to Rule 26(a)(2)(B) disclosures is "the scope of the proposed testimony."  To the extent a treating physician "limits his or her testimony to the patient's care and treatment, the physician is not 'specially retained' despite the fact that the witness may offer opinion testimony under Fed.R.Evid. 702, 703, and 705." Thus, "a treating physician may testify about that which is related to and learned through actual treatment of the [patient], and which is based on his or her 'personal knowledge of the examination, diagnosis and treatment."  The trial court has the discretion to limit or prohibit a treating physician's opinion testimony that goes beyond information obtained during the physician's care and treatment of the patient, or if the court determines the physician was retained specifically to develop opinion testimony.  For example, if a treating physician asks to review medical records from another health care provider for the purpose of rendering opinion testimony, then the physician may be considered "specially retained," and therefore subject to the requirements of Rule 26(a)(2)(B), despite having also treated the patient.  Similarly, if an attorney selects the physician who provides treatment for the patient, "it is presumed that the physician was selected for expert testimony."  However, merely because a treating physician is paid for his or her time to testify does not make the physician a retained expert subject to Rule 26(a)(2)(B) disclosures.

Id. (internal citations omitted); see also Aberle, 2009 WL 1080648 at *2 (the

16

06-5057-KES, 2009 WL 1080648 at *2 (D.S.D. April 22, 2009) (setting the scope of testimony of plaintiff's treating psychologist who had been identified as an expert witness but had not provided an expert report); see also Owen v. United States, No. CIV. 07-4014-KES, 2008 WL 5122282 at *3 (D.S.D. Dec. 5, 2008) (court held that treating physician who had been identified as an expert witness but had not prepared an expert report could testify as to "that which is related to and learned through actual treatment of the [patient], and which is based on his or her 'personal knowledge of the examination, diagnosis and treatment.' ") (citing Navrude v. United States (USPS), No. C.01-4039-PAZ, 2003 WL 356091 at *7 (N.D.Iowa, Feb. 11, 2003) (internal citation and quotation omitted)); see also Doyle v. Graske, No. 7:05CV21, 2008 WL 824275 at *1 (D.Neb. March 20, 2008) (finding that treating physician was not required

---

fact that an attorney suggested that his client see a particular treating health care provider did not convert the provider into a retained expert); Garcia v. City of Springfield Police Department, 230 F.R.D. 247, 248-49 (D.Mass. 2005) (reviewing case law from other circuits and finding that "[t]he common rule...is that so long as the expert care-provider's testimony about causation and prognosis is based on personal knowledge and on observations obtained during the course of care and treatment, and he or she was not specially retained in connection with the litigation or for trial, a Rule 26 expert report is not necessary"); accord Christopher W. Dyer, Note, Treating Physicians: Fact Witnesses or Retained Expert Witnesses in Disguise?  Finding a Place for Treating Physician Opinions in the Iowa Discovery Rules, 48 Drake L.Rev. 719, 730-31 (2000) (reviewing, in part, federal courts' treatment of treating physicians as expert witnesses and finding that only a "small minority of federal courts addressing the treating physician issue have held that treating physicians who have not presented the detailed report, as required of retained experts, are prevented from providing testimony regarding causation and prognosis").

to provide an expert report when giving expert testimony "upon matters encompassed in the ordinary care of a patient, including the cause of a medical condition, diagnosis, prognosis and extent of disability.")

The court does not take lightly Mr. Murphy's disregard of the district court's scheduling order or the additional expense to which Kmart may be subjected to in preparation for Dr. Ertz' expert testimony. Accordingly, the court will next address whether sanctions are appropriate in this case.

**B.    Whether Rule 37 Sanctions are Warranted**

Federal Rule of Civil Procedure 37(c)(1) provides as follows:

**(c)    Failure to Disclose, to Supplement an Earlier Response, or to Admit.**

> **(1)    *Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A)    may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > (B)    may inform the jury of the party's failure; and
> >
> > (C)    may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1) (emphasis in original).

Sanctions under Rule 37(c)(1) are mandatory unless the non-disclosure

was substantially justified <u>or</u> harmless.  <u>Musser</u>, 356 F.3d at 758.  The court finds that Mr. Murphy was not substantially justified in failing to timely identify Dr. Ertz as an expert witness.  The court is not entirely persuaded by Mr. Murphy's argument that he did not identify Dr. Ertz as an expert witness because he did not intend to resume treatment with him.  Since the beginning of this lawsuit, Mr. Murphy has alleged a claim for intentional infliction of emotional distress and, thus, could be expected to present expert testimony on this issue.  Yet, the only timely expert disclosure made by Mr. Murphy is of an economic expert.  Perhaps Mr. Murphy assumed that designating Dr. Ertz as a fact witness under Rule 26(a)(1) was the same as designating Dr. Ertz as an expert witness under Rule 26(a)(2).[4]  <u>See id.</u>  However, a "misunderstanding of the law does not equate to a substantial justification for failing to comply with the disclosure deadline."  <u>Id.</u>

    "The purpose of the 'harmless' provision is to 'avoid unduly harsh penalties in a variety of situations.' "  <u>Benson</u>, 2008 WL 2781202 at *2 (quoting Fed. R. Civ. P. 37 advisory committee's note to the 1993 amendments).  By allowing Mr. Murphy to designate Dr. Ertz as an expert witness, the court finds

---

    [4]Mr. Murphy's position on this issue is puzzling.  In a recent civil case litigated before the district court in South Dakota, Mr. Murphy's counsel timely identified Dr. Ertz as an expert witness who would testify as to his client's emotional injuries, causation, and future treatment.  <u>See</u> <u>Aberle v. Polaris</u>, No. CIV. 06-5057-KES, Docket 147 (D.S.D.).  Mr. Murphy's counsel obviously understood the importance, in terms of the scope of allowable testimony, of designating a testifying psychologist as an expert witness.

that, given the current procedural posture of this case, the primary harm to

Kmart is economic in nature.  Again, as stated earlier, the trial has not been

set in this case, the substance of Dr. Ertz' opinions is known to Kmart, and

Kmart has apparently retained its own consulting expert to review

Mr. Murphy's medical records.

However, if Mr. Murphy had designated Dr. Ertz as an expert by his

September 30, 3008, deadline, Kmart's February 3, 2009, deposition of

Dr. Ertz would have sought his opinions as an expert witness.  Although the

court leaves it to Kmart's discretion as to whether it needs to re-depose

Dr. Ertz, if another deposition is needed, Kmart would incur needless,

duplicative costs.  The court finds that, in order to mitigate the harm to Kmart,

Mr. Murphy shall be responsible for the court reporter fees and Dr. Ertz' fees in

connection with the taking of another deposition, if Kmart deems it necessary

to do so.  Mr. Murphy shall also be responsible for Kmart's travel fees in

attending the deposition, although Kmart shall be responsible for its own

attorney fees.[5]  See Magelky v. BNSF Railway Co., No. 1:06-CV-025, 2008 WL

281778 at *2 (D.N.D. Jan. 29, 2008) (in denying defendant's motion to exclude

---

[5]The court will not order Kmart to assume Kmart's expert fees in
connection with testifying at trial.  If Mr. Murphy had timely identified Dr. Ertz
as an expert witness, Kmart would have hired its own expert to testify at trial
to rebut Dr. Ertz' testimony.  Thus, if Dr. Ertz is designated an expert witness
now, Kmart is in no different position than it would have been last year when
Mr. Murphy's expert designations were due.

causation testimony of plaintiff's treating physicians, the court allowed the defendant to depose treating physicians and ordered plaintiff to bear all costs associated with the taking of the depositions, including court reporter fees and fees charged by the treating physicians for attending the depositions); Jochims, 144 F.R.D. at 356 (as a sanction for failing to disclose his expert witnesses in accordance with the court's scheduling order, plaintiff was required to pay the experts' deposition fees, but not defendant's attorney fees and expenses incurred when deposing the experts).

The court orders Mr. Murphy to formally designate Dr. Ertz as an expert witness within three days of service of this order. As the discovery deadline is fast approaching, the court would encourage the parties to jointly move the district court to extend the discovery deadlines to accommodate a second deposition of Dr. Ertz, if Kmart deems a second deposition necessary. The court would also urge the parties to work together to schedule a second deposition promptly and without further delay. In order to cure any prejudice to Kmart, Kmart shall have the opportunity to designate its own expert. Kmart shall designate its expert by no later than 10 days from service of Mr. Murphy's designation of Dr. Ertz. Kmart's expert shall provide his expert report at the time the designation is filed. Kmart should move the district court for an extension of time to provide its expert's report if the time frame set forth herein is insufficient.

**CONCLUSION**

In accordance with the above discussion, it is hereby

ORDERED that Mr. Murphy's motion for leave to allow supplement to designation of expert witness [Docket 169] is granted.

**NOTICE TO PARTIES**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. <u>See</u> Fed. R. Crim. P. 58(g)(2). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require review by the district court.

Dated June 9, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE